## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| MARIA SANCHEZ, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br>v.<br>NEW ERA ENTERPRISES, INC. and NEW ERA LIFE INSURANCE COMPANY,<br><br>     Defendants. | Case No.:  4:25-cv-00732 |
| EBONY MIDCALF, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br>v.<br>NEW ERA ENTERPRISES, INC. and NEW ERA LIFE INSURANCE COMPANY,<br><br>     Defendants. | Case No.:  4:25-cv-00775 |
| STEVEN STAPP, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br>v.<br>NEW ERA ENTERPRISES, INC. and NEW ERA LIFE INSURANCE COMPANY,<br><br>     Defendants. | Case No.:  4:25-cv-00845 |

## PLAINTIFFS' MOTION TO CONSOLIDATE ACTIONS, APPOINT INTERIM CLASS COUNSEL AND SET A SCHEDULE

Plaintiffs in the above-captioned actions ("Plaintiffs"), individually, and on behalf of all those similarly situated, respectfully request that the Court: (1) pursuant to Federal Rule of Civil Procedure 42(a), consolidate the above-styled actions (the "Related Actions"), as well as any other future actions based upon the same underlying data incident, under the first-filed case number and bearing the new case style: "*In New Era Enterprises Inc. Data Incident Litigation*"; appoint Plaintiffs' leadership structure consisting of Courtney E. Maccarone of Levi & Korsinsky LLP, Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, Jeff Ostrow of Kopelowitz Ostrow, P.A., and A. Brooke Murphy of Murphy Law Firm as interim Co-Lead Counsel; (3) stay the Related Actions, including any of the Defendants' responsive pleading deadlines, and require the filing of a consolidated class action complaint ("Consolidated Complaint") within 60 days of entry of an order consolidating the cases and appointing leadership; and (4) set the deadline for Defendants' response to the Consolidated Complaint 30 days after the Consolidated Complaint is filed, set the deadline of 30 days thereafter for Plaintiffs' response thereto, followed by 21 days thereafter for the Defendants' reply.

As discussed below, consolidation is proper because each action: (i) is based on the same alleged data incident; (ii) is brought against the same defendants; (iii) asserts the same or overlapping allegations and claims for relief; and (iv) seeks to represent the same or overlapping putative classes. Given the common alleged factual background and claims asserted in each action, consolidation will streamline litigation and preserve judicial and party resources.

## I.    Introduction

All of the above-captioned cases arise out of the same data incident involving New Era Enterprises, Inc.'s and New Era Life Insurance Company's (collectively, "New Era" or "Defendants") computer system occurring between December 9, 2024 and December 18, 2024,

resulting in the potential accessibility of Plaintiffs' and Class Members' personally identifiable information ("PII") and protected health information ("PHI") (collectively, "Private Information") (the "Data Incident"). Defendants are a life insurance company that operate New Era Life Insurance Company, New Era Life Insurance Company of the Midwest, Philadelphia American Life Insurance Company, and Life of America Insurance Company. Defendants collected Plaintiffs' Personal Information through their operations as an insurance company. Plaintiffs learned they were victims of the Data Incident, and each decided to file their respective putative class actions following their receipt of notice letters from Defendants in February 2025.[1]

The Related Actions focus on the same underlying factual premise – the Data Incident – and assert substantially identical (if not identical) claims on behalf of the same or substantially similar putative classes. Each plaintiff relies on the same set of alleged operative facts as to the Data Incident, asserts overlapping claims, on behalf of similarly defined classes, seeking similar relief. Consolidation is therefore appropriate. In these circumstances, Plaintiffs, the Class, Defendants, and the Court will be best served in a consolidated proceeding, which will preserve party and Court resources.

Proposed Interim Class Counsel satisfy the elements of Fed. R. Civ. P. 23(g) and are well-suited to lead the prosecution of this litigation on behalf of Plaintiffs and the proposed Class. Proposed Interim Class Counsel have spent a significant amount of time and effort investigating, researching, and litigating the case, are familiar with the legal and factual issues in question, and

---

[1] The Related Actions include: *Maria Sanchez v. New Era Enterprises Inc., and New Era Life Insurance Company,* Case No. 4:25-cv-00732 (S.D. Tex.); *Ebony Midcalf v. New Era Enterprises Inc., and New Era Life Insurance Company,* Case No. 4:25-cv-00775 (S.D. Tex); *Steven Stapp v. New Era Enterprises Inc., and New Era Life Insurance Company,* Case No. 4:25-cv-00845 (S.D. Tex.).

intend to pursue a strategy that works best for the interests of the putative Class that Plaintiffs seek to represent.

Now, with multiple cases on file against Defendants and the likelihood that more will follow, Plaintiffs request that the Related Actions – which involve materially similar allegations against Defendants and seek to certify materially similar classes – be consolidated and that the Court appoint Interim Class Counsel. Plaintiffs and counsel in all Related Actions support consolidation and the appointment of Proposed Interim Class Counsel.

## II.    Argument and Authorities

### A.  Legal Standard for Consolidation

Federal Rule of Civil Procedure 42(a) provides:

> If actions before the court involve a common question of law *or* fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

(emphasis added). "Rule 42(a) provides district courts with broad authority to consolidate actions that 'involve a common question of law or fact.'" *Luera v. M/V Alberta*, 635 F.3d 181, 194 (5th Cir. 2011) (quoting Fed. R. Civ. P. 42(a)); *see also In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1013 (5th Cir. 1977) ("The trial court's managerial power is especially strong and flexible in matters of consolidation.").

"The purpose of consolidation is to permit trial convenience and economy in administration." *In re Air Crash Disaster at Fla. Everglades*, 549 F.2d at 1014 (citation omitted). Accordingly, "district judges have been urged to make good use of Rule 42(a) in order to expedite the trial and eliminate unnecessary repetition and confusion." *Id.* at 1013 (citation, quotations, and alterations omitted); *see also St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*, 712 F.2d 978, 989 (5th Cir. 1983) ("Consolidating actions in a district court is

proper when the cases involve common questions of law and fact, and the district judge finds that it would avoid unnecessary costs or delay.").

The following factors are pertinent to the decision of whether to consolidate actions:

> (1) whether the actions are pending before the same court; (2) whether the actions involve a common party; (3) any risk of prejudice or confusion from consolidation; (4) the risk of inconsistent adjudications of common factual or legal questions if the matters are tried separately; (5) whether consolidation will reduce the time and cost of trying the cases separately; and (6) whether the cases are at the same stage of preparation for trial.

*Bayati v. GWG Holdings, Inc.*, No. 3:22-CV-0410-B, 2023 WL 5925880, at *2 (N.D. Tex. Sept. 12, 2023).

### B.  The Related Actions Should be Consolidated

Each Related Action involves common questions of law and/or fact, and all relevant factors weigh in favor of consolidation, which will promote efficiency and uniformity without prejudicing any party. The Court should therefore consolidate all Related Actions with this first-filed case.

All Related Actions involve common factual and/or legal questions as they arise from the same occurrence: the Data Incident. Courts have recognized that consolidation is appropriate where multiple actions arise from the same data breach event. *See, e.g.*, *Lockhart v. El Centro Del Barrio*, No. SA-23-CV-01156-JKP, 2024 WL 303253, at *2 (W.D. Tex. Jan. 25, 2024) (finding consolidation appropriate because "Plaintiffs are all patients of Defendant asserting causes of action based on the same data breach resulting from the same cyberattack"); *Kaplan v. 21st Century Oncology Holdings*, No. 2:16-cv-210, 2016 WL 9383330, at *2 (M.D. Fla. July 21, 2016) ("it is clear that common questions of law and fact permeate these cases [because] . . . all of the cases appear to arise from the same alleged" data privacy incident).

Because all Related Actions are filed in this District, the first factor guiding the Court's analysis weighs in favor of consolidation. *See U.S. ex rel Frey v. Health Mgmt. Sys., Inc.*, No. 3:19-cv-1141-B, 2021 WL 9145414, at *2 (N.D. Tex. Mar. 15, 2021) (first factor satisfied when "the cases are pending in the same court"); *Zolezzi v. Celadon Trucking Servs., Inc.*, No. CIV.A.H-08-3508, 2009 WL 736057, at *1 (S.D. Tex. Mar. 16, 2009) (first factor satisfied where both actions filed in same district and division).

The second factor is likewise satisfied because all Related Actions are against Defendants and seek to certify national classes of similarly situated individuals whose Private Information was allegedly accessible in the Data Incident. *See Lockhart*, 2024 WL 303253, at *2 (fact that all cases filed on behalf of same class of data breach victims against same defendant supports consolidation); *Bayati*, 2023 WL 5925880, at *2 (consolidating actions filed on behalf of same proposed class against same defendant); *Arnold & Co., LLC v. David K. Young Consulting, LLC*, No. SA-13-CV-00146-DAE, 2013 WL 1411773, at *2 (W.D. Tex. Apr. 8, 2013) (ordering consolidation where "[b]oth cases involve essentially the same parties").

The third and fourth factors favor consolidation as well. On one hand, trying the Related Actions separately would risk inconsistent findings and rulings in each case arising from the same Data Incident, brought on behalf of the same putative class of individuals allegedly affected, against the same Defendants. *See Lockhart*, 2024 WL 303253, at *2 (finding that "[c]onsolidation will ensure consistent rulings and promote judicial economy" where three cases asserted "causes of action based on the same data breach resulting from the same cyberattack"); *JFP Servs., L.L.C. v. Torans*, No. SA-17-CV-00210-FB, 2017 WL 9362704, at *2 (W.D. Tex. Dec. 21, 2017) ("In light of these common questions of law and fact, the Court finds there is a risk of inconsistent adjudication if the Court were to allow these cases to be tried separately before different

judges[.]"). On the other hand, "[a]ny prejudice to the parties flowing from the consolidation would be minimal in comparison to these considerations." *Id.*; *see also Stoneeagle Servs., Inc. v. Gillman*, No. 3:11-CV-02408-P, 2014 WL 12577069, at *3 (N.D. Tex. Jan. 28, 2014) ("Given the substantial similarities among the facts and causes of action, the prospect of confusion incumbent on the fact finder will be nominal at best because these cases tell the same story[.]"); *Zolezzi*, 2009 WL 736057, at *2 ("[T]he court finds that the risk of prejudice or confusion if the cases are consolidated is minimal. This risk is, therefore, outweighed by the risk of inconsistent judgments should the cases be tried separately.").

Regarding the fifth factor, consolidating the Related Actions will certainly reduce the time and costs for all involved by eliminating the need for separate filings, discovery, settlement negotiations, hearings, and trials for the 16 cases arising from the same Data Incident, involving the same Defendant and putative classes, and presenting the same factual and legal issues. This factor thus weighs in favor of consolidation. *See Bayati*, 2023 WL 5925880, at *2 (where two actions "make nearly identical legal claims based on the same set of facts," and were "filed on behalf of the same proposed class," consolidation "would therefore promote judicial efficiency"); *Gate Guard Servs. L.P. v. Solis*, No. CIV.A. V-10-91, 2011 WL 2784447, at *15 (S.D. Tex. July 12, 2011) (ordering consolidation where "the same factual and legal issues exist in both cases and consolidating the actions would be more efficient than litigating the two cases separately").

Finally, because all Related Actions are at the same early procedural stage—complaints are filed, but there have been no responsive pleadings, and no scheduling orders have been entered—the sixth factor weighs in favor of consolidation. *See Doe (S.M.A.) v. Salesforce, Inc.*, No. 3:23-CV-1040-B, 2023 WL 4108845, at *2 (N.D. Tex. June 20, 2023) (granting consolidation where cases at the same pre-trial stage); *Arnold & Co.*, 2013 WL 1411773, at *2 (ordering

consolidation where "the cases were filed less than one month apart, no dispositive motions have been filed in either case, and very little discovery has occurred"); *Gabriel v. OneWest Bank FSB*, No. CIV.A. H-11-3356, 2012 WL 1158732, at *1 (S.D. Tex. Apr. 5, 2012) (ordering consolidation where "[n]either case has been set on schedule yet, so the litigation is at the same stage in both"); *Zolezzi*, 2009 WL 736057, at *2 (ordering consolidation where "both actions are at the early stages of litigation").

Accordingly, because all factors weigh in favor of consolidation, consolidating the Related Actions "is not only appropriate, but would promote this Court's judicial efficiency and economy and would tend to avoid unnecessary costs or delay." *Mayfield*, 2003 WL 21250935, at *2. The Court should therefore consolidate the Related Actions into this first-filed case.

### C. Legal Standard for Appointment of Interim Class Counsel

Rule 23(g)(3) explicitly permits a court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." Manual for Complex Litigation ("MCL") § 21.11 (4th ed. 2004).

When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Fed. R. Civ. P. 23(g)(1)(A). *See Kjessler v. Zaappaaz, Inc*., No. 4:17-CV-3064, 2018 WL 8755737, at *3 (S.D. Tex. Aug. 31, 2018) (citing *Buonasera v. Honest Co., Inc*., 318 F.R.D. 17, 18 (S.D. N.Y. 2016); *In re Mun. Derivatives Antitrust Litig*., 252 F.R.D. 184, 186 (S.D. N.Y. 2008).) Under the rule, a court appointing class counsel must evaluate whether the proposed counsel will fairly and adequately represent the interests of

the class. *See* Fed. R. Civ. P. 23(g)(2), (4). In doing so, a court must consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A), (2). A court, in its discretion, also may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

## 1.    Appointment of Interim Class Counsel is Appropriate

Proposed Interim Class Counsel satisfy all the requirements for appointment by the Court under Fed. R. Civ. P. 23(g)(3). The attorneys and their firms have successfully litigated numerous class actions involving privacy claims on behalf of tens of millions of consumers. Proposed Interim Class Counsel possess the necessary resources to prosecute this litigation, have the support of the Plaintiffs from each of the cases on file, are working together collectively already, and will continue to work in this fashion to manage this litigation effectively and efficiently. Because Proposed Interim Class Counsel have the case-management and complex-litigation skills, experience, knowledge of the relevant facts and legal issues, support of all Plaintiffs and their counsel from the Related Actions, and the extensive resources needed to efficiently prosecute this action on behalf of putative class members, the Court should grant Plaintiffs' motion. Proposed Interim Class Counsel work, experience, knowledge, resources, and successful track record litigating consumer data breach cases demonstrate that they are superbly qualified to represent the Proposed Class's interests under the factors enumerated in Fed. R. Civ. P. 23.

i.    **Proposed Interim Class Counsel Have Performed Substantial Work Investigating and Litigating the Claims to Date**

One factor courts consider is the work and resources counsel expend investigating the claims being asserted when appointing lead counsel. *See, e.g., Adedipe v. U.S. Bank, Nat. Ass'n*, No. CIV. 13-2687 JNE/JJK, 2014 WL 835174, at *3 (D. Minn. Mar. 4, 2014) (appointing interim class counsel because they "devoted the more substantial effort towards pre-suit investigation and identification of claims"); *In re IndyMac ERISA Litig.*, No. CV0804579DDPVBKX, 2008 WL 11343122, at *2 (C.D. Cal. Oct. 7, 2008) (same).

Here, immediately after the public announcement of the Data Incident, Proposed Interim Class Counsel began investigating potential legal claims and remedies for the victims of the breach. Those investigations included, among other things:

- Investigating the facts surrounding the Data Incident;

- Interviewing numerous customers injured by the Data Incident;

- Researching legal claims;

- Drafting initial pleadings; and

- Organizing Plaintiffs and their counsel and discussing consolidating the relevant actions for unified proceedings and preparing the consolidation and proposed leadership papers.

The facts alleged by Plaintiffs in the Related Actions are material in terms of the alleged impact to individual customers and the consumer marketplace as a whole. Given the scope of the Data Incident and the number of individuals potentially affected, Proposed Interim Class Counsel worked to quickly organize and avoid any delay that could result from a leadership dispute to address the merits of the case as expeditiously as possible. Moreover, in the spirit of their prior.

and positive working relationship, assignments have been, and will continue to be, allocated fairly and in a manner that takes advantage of the strengths of each firm while eliminating any duplicity.

Proposed Interim Class Counsel will continue to operate as a cohesive, well-organized group. Going forward, and if appointed, Proposed Interim Class Counsel will establish a standardized protocol for managing and reporting time and expenses incurred to prosecute the case as efficiently as possible. *See, e.g.*, *In re Lenovo Adware Litig.*, No. 15-MD-02624, 2015 WL 10890657, at *1 (N.D. Cal. July 27, 2015) (noting that the establishment of a "reasonable, fair, and transparent" billing protocol is an important factor in selecting interim class counsel).

Accordingly, the substantial work and investigation to date weigh in favor of appointing Proposed Interim Class Counsel under Fed. R. Civ. P. 23(g)(3), as Proposed Interim Class Counsel are organized, unified, and committed to working together for the best interests of the class. *Dependable Component Supply Corp. v. Murata Mfg. Co.*, No. 5:18-CV-00198-EJD, 2018 WL 3388548, at *2 (N.D. Cal. Apr. 27, 2018) (selecting interim counsel based on the effort expended to investigate the claims and the resources available to prosecute the litigation).

### ii.    Proposed Leadership Possess the Necessary Experience, Skill, and Knowledge of the Law to Prosecute this Litigation

A primary factor in selecting interim counsel is their experience, skill, knowledge, and familiarity with the relevant law. *See, e.g.*, *Buettgen v. Harless*, 2011 U.S. Dist. LEXIS 53888, at *27 (N.D. Tex. May 19, 2011) (appointing class counsel with substantial experience in class actions and demonstrated knowledge of the relevant law). Proposed Interim Class Counsel have the experience and skill to prosecute this action efficiently and effectively. As set forth below, their résumés include extensive experience leading complex class actions, including data breach cases on behalf of millions of consumers. They will formulate and present positions on substantive and procedural issues during the litigation. *See* Manual for Complex Litigation §

10.221 ("Typically [lead counsel] act for the group—either personally or by coordinating the efforts of others—in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met."). Courts have found that proposed leadership counsel's experience and service as lead counsel in prior cases is particularly persuasive. *See, e.g.*, *In re Lenovo Adware Litig.*, 2015 WL 10890657, at *2 (finding class-action and complex litigation leadership experience relevant for appointment).

As demonstrated below, Proposed Interim Class Counsel each have substantial data breach class-action experience, resources, and knowledge that will undoubtedly benefit the putative class as this litigation proceeds.

### Proposed Interim Co-Lead Counsel

#### Courtney E. Maccarone of Levi & Korsinsky, LLP

Courtney E. Maccarone is a partner at Levi & Korsinsky, LLP[2] where she focuses her practice on consumer class action litigation. Ms. Maccarone, one of the founding members of Levi & Korsinsky, LLP's Consumer Protection practice group, has extensive class action experience. Ms. Maccarone graduated from Brooklyn Law School, magna cum laude, in 2011, and has dedicated the entirety of her legal career to representing consumers.

With more than 13 years of experience, she has focused her practice on prosecuting consumer class actions and has a significant amount of experience litigating class actions involving data breaches and other privacy-related cases, most recently in: *In re: MOVEit Customer Dara*

---

[2] Levi & Korsinsky's firm resume is attached as Exhibit A.

*Security Breach Litigation*, Case No. 1:23-md-03083 (D. Mass) (member of settlement committee in multi-track data breach MDL comprised of voluminous defendants and actions); *Kholyusev et al. v. Welfare & Pension Administration Service, Inc*., Case No. 22-2-04152 (Wash. Sup. Ct.) (co-lead counsel in data breach class action and secured a settlement valued up to $1,750,000); *In re SAV-RX Data Breach Litigation*, Case No. 8:24-cv-204 (D. Neb.) (appointed Interim Co-Lead Class Counsel in data breach class action); *In re Christie's Data Breach Litigation*, Case No. 24-cv-4221 (member of executive committee in data breach class action pending preliminary approval); *Stoudemire et al v. Lee Enterprises, Inc.*, Case No. 22-cv-00086 (S.D. Iowa) (counsel in ongoing proposed class action accusing Lee Enterprises, Inc. of violating the Video Privacy Protection Act); *Joiner et al. v. NHL Enterprises, Inc. et al.*, Case No. 23-cv-02083 (S.D.N.Y.) (counsel in ongoing proposed class action accusing defendants of violating the Video Privacy Protection Act); *Amber Wilson v. Frontier Communications Parent, Inc.*, Case No. 3:24-cv-01418 (N.D. Tex.) (appointed to executive committee in ongoing data breach class action); *In re HealthEC LLC Data Breach Litigation*, Case No. 2:24-cv-00026 (D.N.J.) (appointed to plaintiffs' steering committee in data breach class action). In addition to Ms. Maccarone's recent data privacy cases listed above, Ms. Maccarone's recent notable representations include *Doe v. Roblox Corporation*, Case No. 3:21-cv-03943 (N.D. Cal.), where she represented individuals who experienced moderation and removal of content on the Roblox platform without compensation, resulting in $10 million settlement, *Lash Boost Cases*, JCCP No. 4981 (Cal. Super. Ct. S.F. Cty.), where she represented consumers who purchased Rodan + Fields' Lash Boost product which plaintiffs alleged failed to disclose material information relating to potential adverse reactions resulting in $38 million settlement and *Goldstein v. Henkel Corporation et al*., Case No. 3:22-cv-00164 (D. Conn.), where she represented purchasers of aerosol and spray antiperspirant products

sold under the Right Guard brand which contain or risk containing benzene, resulting in $1.95 million settlement.

Another recent accomplishment for Ms. Maccarone was obtaining a partial reversal from the Northern District of California where the Ninth Circuit, in *Calise v. Meta Platforms*, 103 F.44[th] 732 (9th Cir. 2024), held that Section 230(c)(1) of the Communications Decency Act does not apply to Meta's users' contract-related claims in a case relating to fraudulent ads run on the Facebook platform.

In addition to Ms. Maccarone's personal qualifications, she brings the support and resources of Levi & Korsinsky to this case. Levi & Korsinsky is a national law firm with decades of combined experience litigating complex consumer and securities class actions in state and federal courts throughout the country. Levi & Korsinsky maintains offices in New York, Connecticut, California, and Washington, DC.

***Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC***

Since its founding in 1965, Milberg has repeatedly taken the lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate governance, and recovered over $50 billion in verdicts and settlements.[3] Milberg has been instrumental in obtaining precedent setting decisions at every level, including at the United States Supreme Court.[4] The firm pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of large-scale wrongdoing. Milberg has been described by the

---

[3] *See, e.g.*, *In re Tyco Int'l Ltd., Sec. Litig.*, MDL 1335 (D.N.H.) (serving as lead counsel and obtaining approval of $3.2 billion settlement); *In re Prudential Ins. Co. Sales Practice Litig.*, No. 95-4704 (D.N.J.) (serving as lead counsel and recovering more than $4 billion for policyholders); *see also* https://milberg.com/outstanding-recoveries/.
[4] *See* https://milberg.com/precedent-setting-decisions/page/3/.

New York Times as "[a] powerhouse that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers."[5]

Milberg is one of the largest plaintiffs' class action firms in the United States (and abroad). The firm currently is involved in some of the largest and well-known class action cases in the country and is particularly active in the field of data breach and privacy litigation. The firm is comprised of more than one hundred-twenty attorneys who work from offices across the United States and in Portugal, the United Kingdom, the Netherlands, and Germany.

Mr. Klinger is a Partner at Milberg and Chair of its Data Privacy and Cybersecurity Practice Group. Mr. Klinger is one of the most well-known and respected data privacy attorneys in the United States and has extensive experience serving as leadership in numerous privacy class actions, including as lead or co-lead counsel in the largest data breaches in the country. Over the past 3 years, Mr. Klinger has settled on a class-wide basis more than forty (40) class actions involving privacy violations, the majority of which are data breaches, in State and Federal courts across the country as lead or co-lead counsel. To his knowledge, no other attorney in the country has settled more data breach class actions during this time period. Representative cases include:

- *Parris, et al., v. Meta Platforms, Inc.*, Case No.2023LA000672 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger serves as lead counsel and obtained a settlement of $68.5 million for 4 million consumers in a privacy class action);

- *Boone v. Snap, Inc.*, Case No. 2022LA000708 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger served as lead counsel and obtained a settlement of $35 million for 3 million consumers in a privacy class action);

- *Carrera Aguallo v. Kemper Corp.*, Case No. 1:21-cv-01883 (N.D. Ill. Oct. 27, 2021) (where Mr. Klinger served as lead counsel in a data breach class action involving 6 million consumers and reached a settlement valued at $17 million);

---

[5] Sam Roberts, *Melvyn Weiss, Lawyer Who Fought Corporate Fraud, Dies at 82*, N.Y. TIMES, (Feb. 5, 2018), https://www.nytimes.com/2018/02/05/obituaries/melvyn-weiss-lawyer-who-fought-corporate-fraud-dies-at-82.html.

- *Heath v. Insurance Techs. Corp.*, No. 21-cv- 01444 (N.D. Tex.) (where Mr. Klinger served as lead counsel and reached a class-wide settlement for $11 million for a major data breach involving more than 4 million consumers).

Mr. Klinger is presently serving as court-appointed lead-counsel in several of the largest privacy class actions in the country, including:

- *In re Meta Browser Tracking Litigation*, Case No. 3:22-cv-05267-AMO (N.D. Cal.) (where Mr. Klinger is court-appointed co-lead counsel to tens of millions of consumers in a privacy class action against Facebook);

- *Morrill v. Lakeview Loan Servicing, LLC*, Case No. 1:22-cv-20955-DPG (S.D. Fla.) (where Mr. Klinger is appointed to the leadership committee in a data breach class action involving 6 million consumers);

- *Sherwood v. Horizon Actuarial Services, LLC*, Case No. 1:22-cv-01495-ELR (N.D. Ga.) (where Mr. Klinger is court-appointed co-lead counsel in a data breach class action involving 4 million consumers);

- *In re: Cerebral, Inc. Privacy Practices*, Case No. 2:23-cv-1803 (C.D. Cal.) (where Mr. Klinger is court-appointed co-lead counsel in a privacy class action involving 3 million consumers);

- *Dusterhoft v. OneTouchPoint Corp.*, Case No. 2:22-cv-00882-BHL (E.D. Wis.) (where Mr. Klinger is court-appointed co-lead counsel in a data breach class action involving 4 million consumers); and

- *In re: Arthur J. Gallagher*, Case No. 1:22-cv-000137 (N.D. Ill) ((where Mr. Klinger is court-appointed co-lead counsel in a data breach class action involving 3 million consumers).

Of recent, Mr. Klinger has been instrumental in bringing national attention to the unlawful disclosure of personally identifiable information through the use of online tracking technologies (e.g., the Meta Pixel), including by investigating and filing one of the first cases of its kind in the United States. *See Quinto v. The Regents of the University of California*, Case No. 22-cv-012970 (Sup. Ct. Alameda Cty.) (complaint filed June 16, 2022). In the wake of that lawsuit, and due to Mr. Klinger's investigation, UCLA issued notice to more than 94,000 California consumers

advising their private information had been unlawfully disclosed to third-parties. [6] *See* https://www.uclahealth.org/data-notice.  Mr. Klinger is presently litigating more than a dozen similar class actions against various companies for their use of tracking technologies such as Meta Pixel. Moreover, he is one of the few lawyers in the country to have settled a data privacy class action over its use of tracking technologies on a class-wide basis.  *See John v. Advocate Aurora Health, Inc.*, No. 22-CV-1253-JPS (E.D. Wis.) (appointed co-lead counsel with preliminary approval of a $12 million settlement filed on August 11, 2023).

Mr. Klinger has also successfully litigated privacy class actions through class certification. In *Karpilovsky v. All Web Leads, Inc*., No. 17 C 1307, 2018 WL 3108884, at *1 (N.D. Ill. June 25, 2018), Mr. Klinger certified, over objection, a nationwide privacy class action involving more than one million class members. *Id*. In a recent nationwide privacy class settlement hearing in the U.S. District Court for the Northern District of California, Judge Richard Seeborg personally commended Mr. Klinger for "quite a substantial recovery for class members." Judge Seeborg further stated he could not recall any class action case where "the amounts going to each class member were as substantial" as that obtained by Mr. Klinger (and his co-counsel). In addition to his professional experience, Mr. Klinger is presently pursuing his Masters of Laws (LLM) in Data Privacy and Cybersecurity from the University of Southern California Gould School of Law and is a Certified Information Privacy Professional (CIPP/US). Milberg's resume is attached hereto as Exhibit B.

---

[6] In the wake of the *Quinto* lawsuit, the Department of Health and Human Services (DHHS) issued a bulletin on the requirements under HIPAA for online tracking technologies providing that "[r]egulated entities are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of ePHI to tracking technology vendors or any other violations of the HIPAA Rules." *See* https://www.hhs.gov/about/news/2022/12/01/hhs-office-for-civil-rights-issues-bulletin-on-requirements-under-hipaa-for-online-tracking-technologies.html.

***Jeff Ostrow of Kopelowitz Ostrow, P.A.***

Jeff Ostrow is the Managing Partner of Kopelowitz Ostrow PA ("KO") and has been practicing law for 27 years. Mr. Ostrow established the South Florida-based firm immediately following his graduation from Nova Southeastern University in 1997 and has since grown it to 25 attorneys. Beyond managing the firm, Mr. Ostrow heads the class action department and maintains a full caseload of nationwide class actions.

KO is counsel of record in more than 200 pending data breach cases. He is currently Lead Counsel in MDL-3090, *In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-md-3090 (S.D. Fla.), which involves 10 defendants and 6 million people. Additional examples of other cases in which KO serve as Lead Counsel include: *Crowe v. Managed Care of N. Am., Inc.*, No. 23-cv-61065 (S.D. Fla.), affecting eight million individuals; *In re Zeroed-In Techs., LLC Data Breach Litig.*, No. 1:23-cv-03284-BAH (D. Md.), affecting two million individuals, *Harrell v. WebTPA Employer Servs. LLC*, No. 3:24-cv-01160 (N.D. Tex.), affecting 2.5 million individuals; *Stallone v. Fin. Bus. & Consumer Sols., Inc.*, No. 2:24-cv-01876 (E.D. Pa.), affecting almost two million individuals; *Gambino v. Berry, Dunn, Mcneil & Parker LLC*, 2:24-cv-146 (D. Me.), affecting 1.1 million individuals; *Mclean v. Signature Performance, Inc.*, No. 8:24-cv-230 (D. Neb.), affecting at least 106,540 patients; *Wilson v. Frontier Comm'ns Parent, Inc.*, No. 3:23-CV-01418-L (N.D. Tex.), affecting at least 750,000 individuals; *Flores v. S. Tex. Oncology & Hematology, PLLC*, No. 2024CI13299 (Tex. Dist. Ct., Bexar Cty.), affecting 176,303 patients; *In re HealthEquity, Inc. Data Sec. Incident Litig.*, No. 2:24-cv-528 (D. Utah), affecting 4.3 million patients; *Griffiths v. Kootenai Health, Inc.*, No. 2:24-cv-205 (D. Idaho), affecting 827,149 patients, and *Butler v. Acadian Ambulance Serv., Inc.*, No. 6:24-cv-01011 (W.D. La.), affecting 3 million patients.

For about 13 years, KO served as Coordinating Counsel, Settlement Class Counsel, and Lead Class Counsel in *In re Checking Acct. Overdraft Litigation*, No. 1:09-MD-02036-JLK (S.D. Fla.), a large MDL that resulted in the recovery of $1.2 billion from the nation's largest banks, and is Liaison Counsel in *In re Disposable Contact Lens Antitrust Litigation*, No. 3:15-md-2626-HES-JRK (M.D. Fla.), an antitrust class action with $85 million recovered to date. Moreover, KO is co-counsel for Broward County and the City of Fort Lauderdale in *In re: National Prescription Opiate Litigation*, No. 1:17-md-2804 (N.D. Ohio), and for the Broward and Miami-Dade County School Boards in *In re Juul Labs*, No. 19-md-2913 (N.D. Cal.), helping clients recover $100 million and $26 million, respectively.

Federal judges have recognized KO's commitment to excellence. In *Farrell v. Bank of America, N.A.*, 327 F.R.D. 422, 432 (S.D. Cal. 2018), in which KO served as lead counsel on behalf of millions of people, United States District Judge James Lorenz made the following observation when granting final approval of a settlement that included a $68 million recovery and $1.2 billion in injunctive relief requiring the defendant bank to stop an enormously lucrative practice:

> Class Counsel achieved this result through tenacity and great skill. In all of their written submissions and in their presentation at the Final Approval Hearing, Class Counsel's arguments were laudably clear and precise, no small feat given the complexity of the legal questions at issue here. It is clear that substantial preparation went into all of Class Counsel's work on this case.

Similarly, when approving a $13 million settlement in which KO was one of the lead counsel, United States District Judge James Lawrence King commented that "Class Counsel's efforts in pursing and settling these consumer claims were, quite simply, outstanding." *In re Checking Account Overdraft Litig.*, 1:09-md-02036-JLK, 2013 WL 11319244, *16 (S.D. Fla. Aug. 2, 2013). In another recent case in which KO was lead counsel, United States District Judge Jose

Martinez noted, "Here, Class Counsel worked extensively and with a high level of skill to advance Plaintiff's claims . . . The case involved difficult factual and legal issues from a global pandemic. . . . Despite the strong defenses presented by Barry [University], Class Counsel obtained an excellent result for the Settlement Class Members." *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM (S.D. Fla.), ECF No. 84 at 14.

KO has worked productively with Proposed Interim Class Counsel in many other cases. A copy of KO's firm resume is attached. *See* Exhibit C.

### A. Brooke Murphy of Murphy Law Firm

A. Brooke Murphy is the founding member of Murphy Law Firm. For more than a decade, Ms. Murphy has specialized in representing plaintiffs in class actions and other complex litigation. Ms. Murphy has litigated numerous data breach class actions across the country where she has obtained several successful rulings on issues of standing, pleading, and class certification. Ms. Murphy has similarly overcome common challenges by defendants in data breach class actions, including on matters involving the applicability of arbitration clauses, assertions of privilege or work-product protections, and attempts to exclude expert testimony.

Through her involvement in data breach class actions, Ms. Murphy has worked closely with consulting and testifying experts to assist in the preparation of data security and damages reports. Ms. Murphy has conducted technical depositions of data security personnel, forensic investigators, and information security consultants. Ms. Murphy is also well-skilled in managing and navigating large document productions and has overseen the search and review of productions involving millions of pages of documents.

Based on her extensive experience, Ms. Murphy has repeatedly been recognized by Oklahoma Super Lawyers. Likewise, numerous courts around the country have appointed Ms.

Murphy as class counsel or co-lead counsel in data breach class actions. *See, e.g., In re WorkWave Data Breach Litig.,* Case No. 3:24-cv-10592 (D.N.J.); *In re Fidelity Investments Data Breach Litig.,* Case No. 1:24-CV-12601-LTS (D. Mass.); *In re Gryphon Healthcare LLC Data Breach Litig.* Case No. 4:24-cv-3946 (S.D. Tex.); *Archambault v. Riverside Resort & Casino, Inc. and Riverside Resort & Casino, LLC,* Case No. 2:24-cv-1691 (D. Nev.); *Huntley, et al. v. Varsity Brands, Inc.,* Case No. 3:24-v-2633 (N.D. Tex.); *Conaway, et al. v. CSC ServiceWorks, Inc.,* Case No. 2:24-cv-05719 (E.D.N.Y); *In re Bridgeway Center Data Breach Litigation,* Case No. 2024-CA-1395 (Okaloosa County, Fla.); *Saker v. Cherry Street Services, Inc.,* Case No. 24-04205-NZ (Mich., Kent Cty.); *Hufstetler, et al., v. Upstream Rehabilitation, Inc., et al,* Case No. 2024-902563.00 (Ala., Jefferson Cty.); *Lockridge v. Quality Temporary Services, Inc.,* Case No. 4:22-cv-12086 (S.D. Mich.); *Rose v. BHI Energy Services, LLC, et al.,* Case No. 1:23-cv-12513 (D. Mass.); *In re Precision Imaging Centers Data Breach Litigation.,* Case No. 2023-CA-009321 (Duval County, Fla.); *In re: Mondelez Data Breach Litig.,* Case No. 1:23-cv-0399 (N.D. Ill.); *Perez v. Carvin Wilson Software, LLC,* Case No. CV-23-00792-PHX-SMM (D. Ariz.); *Sanders, et al., v. Ibex Global Solutions, Inc., et al.,* Case No. 1:22-cv-00591-TNM (D.C.C.); *In re: Solara Medical Supplies Data Breach Litig.,* Case No. 3:19-cv-00284-H-KSC (S.D. Cal.); *McFarlane v. Altice USA, Inc.,* Case No. 20-CV-1297-JMF (S.D.N.Y.). Ms. Murphy's biography and resume is attached hereto as Exhibit D.

### iii.    Proposed Interim Class Counsel Have and Will Continue to Devote Sufficient Resources to this Case

The resources that Proposed Interim Class Counsel have already committed and will continue to commit to the case also strongly supports the appointment of Proposed Interim Class Counsel. As demonstrated above, Proposed Interim Class Counsel and their firms' resources are not merely financial, but also include substantial expertise and work-product developed in other

similar cases, which will benefit Plaintiffs and the putative class. Proposed Interim Class Counsel's ability to draw from this well-developed repository of information will also allow them to streamline the litigation.

Each attorney understands the time, energy, and skill necessary to lead this litigation, and all have committed the resources required to ensure the effective and efficient representation of the putative class. Proposed Interim Class Counsel can, as needed, draw upon the skills and talents of experienced attorneys and staff members located across the country. In fact, Proposed Interim Class Counsel have already demonstrated their commitment to this litigation by devoting substantial resources to it and coordinating among themselves to file this leadership proposal and to consolidate the Related Actions. And, as their firm résumés and counsels' experience indicate, Proposed Interim Class Counsel have the resources and capacity to see this litigation through to its conclusion, including trial.

If appointed as interim counsel, Proposed Interim Class Counsel will continue to commit the same resources and effort to this case as they have committed to other successful class action litigations and are equally committed to working cooperatively and efficiently for the benefit of the putative class.

### iv.    Additional Factors Supporting Formal Designation of Proposed Interim Class Counsel

Plaintiffs and their counsels' support for the proposed leadership structure also weighs in favor of appointing the Proposed Interim Class Counsel. Notably, the proposed leadership structure has the support of all the Plaintiffs and the law firms involved in the litigation. *See In re Aluminum Phosphide Antitrust Litig.*, No. 93-2452, 1994 WL 481847, at *5, 7 (D. Kan. May 17, 1994) ("In designating lead counsel, the court will also give due consideration to the preferences expressed by the parties themselves, through their counsel."); *see also In re Wendy's Co. S'holder*

*Derivative Litig.*, No. 1:16-cv-1153, 2018 WL 6605394 at *2 (S.D. Ohio Dec. 17, 2018) (quoting *Kubiak v. Barbas*, No. 3:11-cv-141, 2011 WL 2443715, at *2 (S.D. Ohio June 14, 2011) ("[C]ounsel's ability to make inclusive efforts on behalf of all plaintiffs is an 'essential attribute' for lead counsel.")); *Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-01610, 2020 U.S. Dist. LEXIS 164895, at *10 (N.D. Ill. May 30, 2020) ("And all Plaintiffs in this action have consented to the proposed leadership structure."); Manual for Complex Litigation §§ 10.22 (noting desirability of "the attorneys coordinat[ing] their activities without the court's assistance"), 10.272 (describing "private ordering" approach). Indeed, after their cases were filed, Proposed Interim Class Counsel moved quickly to coordinate the proposed leadership structure to avoid any delay attendant with potential multiple and ongoing case filings. Proposed Interim Class Counsel seek this leadership structure to best serve the interests of the proposed classes in the most efficient manner possible.

Another important consideration in selecting leadership is the ability to work well as a team, with opposing counsel, and with the Court. The role of leadership in complex litigation places a premium on professionalism, cooperation, courtesy, and acceptance of the obligations owed as officers of the Court, all of which are critical to the successful management of the litigation. *See* Manual for Complex Litigation § 10.21. One of the demanding aspects of complex litigation is "the difficult[y] of having to communicate and establish effective working relationships with numerous attorneys (many of whom may be strangers to each other)." *Id*. Unlike defense counsel, the plaintiffs' side of consolidated litigation must quickly and effectively merge to form an alliance. This process has the potential for disorganization, in-fighting, and inefficiencies. It is useful to consider whether counsel applying for leadership "have worked together in other cases, their ability to collaborate in the past, divide work, avoid duplication, and

23

manage costs." Duke Guidelines, *supra*, at 43. Selecting lawyers who have previously worked together has many benefits. They have developed working relationships, know of complementary talents, and have "developed certain systems for handling workflow and comparative advantages that will help expedite the case relative to a leadership committee working together for the first time." *Id*. Nowhere could these sentiments be more accurate than among the counsel proposed for Proposed Interim Class Counsel. In other words, Proposed Interim Class Counsel are well suited to jointly prosecute this action because they are able to work cooperatively and inclusively with themselves and other counsel.

Importantly, Proposed Interim Class Counsel have not made any agreements with each other with respect to funding, cost-sharing, pooling clients, fees, or any other matter. They each understand that they will be required to make contributions to fund the litigation, and they will not accept any third-party litigation funding to do so.

While Proposed Interim Class Counsel intend to litigate the case zealously, they are fully aware of the Court's expectation that they prosecute the case efficiently and without duplication. Accordingly, they have already discussed how best to organize to effectively use their members' diverse skills and unique experiences for the efficient prosecution and management of this litigation while avoiding unnecessary and duplicative billing.

Finally, this Court should appoint Proposed Interim Class Counsel because their firms filed the first three actions against Defendants. *See Shane White v. Medical Review Institute of America, LLC*, Case No.: 2:22-cv-00082-DBP, 2022 U.S. Dist. LEXIS 132016, at *8 (D. Utah July 22, 2022) (collecting cases). It is well-established that courts across the country give deference to counsel in the first-filed cases where, as here, they are more than qualified to handle the action. *See In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D. N.Y. 2008)

(appointing as interim lead counsel the firms that filed the first complaints and holding that where a firm has "filed the first complaint[] in [the] case, and the subsequent complaints filed . . . are substantially similar to those initial filings," it provides evidence of the firm's "substantial history of investigating the potential claims in this action."); *see also In re Insulin Pricing Litig.*, 2017 WL 4122437, at *3 (D.N.J. Sept. 18, 2017) (appointing class counsel in part because they "filed the first complaint in this litigation"); *Steele v. United States*, 2015 WL 4121607, at *4 (D.D.C. June 30, 2015) ("[S]ince both groups are more than qualified to handle this action, it would be imminently reasonable to select the Motley Rice Group on the basis that their complaint was filed first."); *Michelle v. Arctic Zero, Inc.*, 2013 WL 791145, at *2 n.3 (S.D. Cal. Mar. 1, 2013) ("[F]irst-to file can be a relevant factor when the factors for class counsel do not tilt heavily in either direction and there is a need for an objective tie-breaker."); *Richey v. Ells*, 2013 WL 179234, at *2 (D. Colo. Jan. 17, 2013) ("Ultimately, Plaintiff Richey was the first to file his case and, therefore, the Court appoints his counsel as Lead Counsel for the consolidated action."); *Carlin v. Dairy America, Inc.*, 2009 WL 1518058, at *2 (E.D. Cal. May 29, 2009) (where multiple counsel filing two identical class action lawsuits seek appointment of interim class counsel, appointment of the first-filed counsel is appropriate where "a simple comparison of the original complaint . . . with the [second-filed complaint] reveals that they are almost identical"); *Moradi v. Adelson*, 2011 WL 5025155, at *3 (D. Nev. Oct. 20, 2011) ("Moreover, as the Moradi Plaintiffs were the first to file suit, it would be appropriate to assign [their attorneys] as lead counsel."); *Biondi v. Scrushy*, 820 A.2d 1148, 1159 (Del. Ch. 2003) (noting that courts will consider which action was filed first for lead counsel purposes where "there is a need for an objective tie-breaker").

### III.     Conclusion

For the reasons set forth above, Plaintiffs respectfully request the Court grant this Motion and enter an order: (1) pursuant to Federal Rule of Civil Procedure 42(a), consolidate the above-styled actions (the "Related Actions"), as well as any other future actions based upon the same underlying data incident, under the first-filed case number and bearing the new case style: "*In New Era Enterprises Inc. Data Incident Litigation*"; (2) appoint Plaintiffs' leadership structure consisting of Courtney E. Maccarone of Levi & Korsinsky LLP, Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, Jeff Ostrow of Kopelowitz Ostrow, P.A., and A. Brooke Murphy of Murphy Law Firm  as interim Co-Lead Counsel; (3) stay the Related Actions, including any of the Defendants' responsive pleading deadlines, and require the filing of a consolidated class action complaint ("Consolidated Complaint") within 60 days of entry of an order consolidating the cases and appointing leadership; and (4) set the deadline for Defendants' response to the Consolidated Complaint 30 days after the Consolidated Complaint is filed, set the deadline of 30 days thereafter for Plaintiffs' response thereto, followed by 21 days thereafter for the Defendants' reply.

DATED: February 27, 2025

Respectfully submitted,

By: /s/ *Patrick Yarborough*
Patrick Yarborough
S.D. Tex. No. 2451377
Benjamin F. Foster
S.D. Tex. No. 1998308
Luke Ott
S.D. Tex. No. 3498645
**FOSTER YARBOROUGH PLLC**
917 Franklin Street, Suite 220
Houston, TX 77002
Tel: (713) 331-5254; Fax: (713) 513-5202
Email: patrick@fosteryarborough.com
Email: ben@fosteryarborough.com
Email: luke@fosteryarborough.com

26

Courtney E. Maccarone*
Mark K. Svensson*
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 17th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: cmaccarone@zlk.com
Email: msvensson@zlk.com

*Attorneys for Plaintiff Midcalf*

Joe Kendall
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 825
Dallas, Texas 75219
214-744-3000
214-744-3015 (Facsimile)
jkendall@kendalllawgroup.com

Jeff Ostrow*
**KOPELOWITZ OSTROW P.A.**
1 W. Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
ostrow@kolawyers.com

Gary Klinger*
John J. Nelson*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com
jnelson@milberg.com

*Attorneys for Plaintiff Sanchez*

27

Leigh S. Montgomery
**EKSM, LLP**
4200 Montrose Blvd., Suite 200
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455
lmontgomery@eksm.com

A. Brooke Murphy *
**MURPHY LAW FIRM**
4116 Will Rogers Pkwy, Suite 700
Oklahoma City, OK 73108
Telephone: (405) 389-4989
abm@murphylegalfirm.com

*Attorneys for Plaintiff Stapp*

\**pro hac vice* forthcoming