**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| *In re New Era Enterprises Inc. Data Incident Litigation* | Case No. 4:25-cv-00732 <br><br> (Consolidated) <br><br> Hon. Lee H Rosenthal |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**
**PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...........................................................................................................ii

I.    INTRODUCTION AND FACTUAL BACKGROUND ......................................................... 1

II.   Legal Standard.................................................................................................................... 2

III.  ARGUMENT ...................................................................................................................... 3

    A.  Plaintiffs Have Standing to Pursue their Claims.................................................... 3

        1.  The Risk to Plaintiffs from the Theft of Their Private Information is Actual and
            Imminent ....................................................................................................... 4

        2.  Plaintiffs' Reasonable Mitigation Efforts Confer Standing......................... 6

        3.  Plaintiffs' Loss of Privacy Confers Standing.............................................. 7

        4.  Concrete Injury Based on the Diminished Value of Private Information..... 7

        5.  Plaintiffs Adequately Plead the Loss of The Benefit of their Bargain ........ 8

        6.  Spam Emails and Calls Are a Cognizable Injury for Standing.................... 9

        7.  Emotional Distress Constitutes a Concrete Injury ...................................... 10

    B.  Plaintiffs State Claims for Relief Pursuant to Rule 12(b)(6) ............................... 11

        1.  Choice of Law............................................................................................... 11

        2.  Plaintiffs Sufficiently Plead Damages for Their Common Law Claims..... 12

            i.    Increased Risk of Harm ........................................................................ 14

            ii.   Diminished Value of Private Information.............................................. 15

            iii.  Lost-Time Damages.............................................................................. 16

            iv.   Emotional Distress................................................................................ 17

            v.    Benefit of the Bargain........................................................................... 17

        3.  Plaintiffs' Tort Claims are not Barred by the Economic Loss Rule ........... 17

        4.  Plaintiffs State a Claim for Negligence *Per Se*................................................ 19

        5.  Plaintiffs State a Claim for Breach of Implied Contract............................... 21

        6.  Plaintiffs State a Claim for Unjust Enrichment ........................................... 23

IV.   CONCLUSION .................................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

*Alonso v. Blue Sky Resorts, LLC,*
    179 F. Supp. 3d 857 (S.D. Ind. 2016) ................................................................... 15

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................................. 3

*Bailey v. Shell W. E&P, Inc.,*
    609 F.3d 710 (5th Cir. 2010) ............................................................................ 11, 12

*Baldwin v. Nat'l W. Life Ins. Co.,*
    No. 2:21-CV-04066-WJE, 2021 WL 4206736 (W.D. Mo. Sept. 15, 2021) ........................... 10

*Bohnak v. Marsh & McLennan Companies, Inc.,*
    79 F.4th 276 (2d Cir. 2023) ......................................................................... 5, 7, 13

*Bowen v. Energizer Holdings, Inc.,*
    118 F.4th 1134 (9th Cir. 2024) ................................................................................. 8

*Bruno v. Donohoe,*
    754 F. Supp. 3d 737 (W.D. Tex. 2024) ...................................................... 12, 14, 17

*Cabezas v. Mr. Cooper Grp. Inc.,*
    No. 3:23-CV-2453-N, 2025 WL 2053287 (N.D. Tex. July 22, 2025) ........................... passim

*Calhoun v. Google LLC,*
    526 F. Supp. 3d 605 (N.D. Cal. 2021) ...................................................................... 8

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) .................................................................................................. 2

*Clemens v. ExecuPharm Inc.,*
    48 F.4th 146 (3d Cir. 2022) ............................................................................... 3, 14

*ConocoPhillips Co. v. Koopmann,*
    547 S.W.3d 858 (Tex. 2018) .................................................................................. 18

*ConocoPhillips Co. v. Koopmann,*
    542 S.W.3d 643 (Tex. App. 2016) ......................................................................... 18

*DeClaire v. G & B McIntosh Family Ltd. P'Ship.,*
    260 S.W.3d 34 (Tex. App.—Houston [1st Dist.] 2008) ......................................... 21

*Dukes v. Philip Johnson/Alan Ritchie Architects, P.C.,*
    252 S.W.3d 586 (Tex. App. 2008) ......................................................................... 14

*Entex, A Div. of Noram Energy Corp. v. Gonzalez*,
94 S.W.3d 1 (Tex. App.--Houston [14th Dist.] 2002) ............................................................ 15

*Est. of Parker v. Mississippi Dep't of Pub. Safety*,
728 F. Supp. 3d 372 (S.D. Miss. 2024) ................................................................................... 4

*Farley v. Eye Care Leaders Holdings, LLC*,
No. 1:22-cv-468, 2023 WL 1353558 (M.D.N.C. Jan. 30, 2023) ........................................... 10

*First Choice Federal Credit Union v. Wendy's Co.*,
2017 WL 1190500 (W.D. Pa. Mar. 31, 2017) ........................................................................ 20

*First Choice Federal Credit Union v. Wendy's Co.*,
No. 16-506, 2017 WL 9487086 (W.D. Pa. Feb. 13, 2017) ..................................................... 20

*Fox v. Iowa Health System*,
399 F. Supp. 3d 780 (W.D. Wis. 2019) ............................................................................ 10, 23

*Gardiner v. Walmart Inc.*,
No. 4:20-cv-04618-JSW, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) ................................ 15

*Griffey v. Magellan Health Inc.*,
562 F.Supp.3d 34 (D. Ariz. 2021) .......................................................................................... 23

*Hawkins v. Scout Energy Mgmt., LLC*,
No. 3:24-CV-01545-N, 2025 WL 2244327 (N.D. Tex. Aug. 5, 2025) ........................... passim

*Haws & Garrett General Contractors, Inc. v. Gorbett Bros. Welding Co.*,
480 S.W2d 607 (Tex. 1972) .................................................................................................... 21

*Hays v. Frost & Sullivan, Inc.*,
No. 23-CV-01490, 2024 WL 4052741 (W.D. Tex. Aug. 16, 2024) ............................. 5, 22, 25

*Heritagemark LLC v. Unum Life Ins. Co. of Am.*,
No. 4:22-cv-04513, 2023 WL 8622998 (S.D. Tex. Dec. 13, 2023) ....................................... 11

*Houle v. Casillas*,
594 S.W.3d 524 (Tex. App.—El Paso 2019) .......................................................................... 24

*Hulse v. Acadian Ambulance Serv. Inc.*,
No. 6:24-CV-01011, 2025 WL 1453847 (W.D. La. May 19, 2025) ............................... passim

*In re 21st Century Oncology Customer Data Sec. Breach Litig.*,
380 F. Supp. 3d 1243 (M.D. Fla. 2019) ................................................................................... 7

*In re Accellion, Inc. Data Breach Litig.*,
713 F.Supp.3d 623 (N.D. Cal. 2024) ..................................................................................... 14

*In re Capital One Data Sec. Breach Litig.*,
  488 F.Supp.3d 374 (E.D. Va. 2020) ................................................ 20

*In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*,
  No. 2:23-cv-01447-ART-BNW, 2025 WL 2393024 (D. Nev. Aug. 15, 2025) ........................ 9

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
  999 F.3d 1247 (11th Cir. 2021) .................................................. 6, 20, 21

*In re ESO Sols., Inc. Breach Litig.*,
  No. 1:23-CV-1557-RP, 2024 WL 4456703 (W.D. Tex. July 30, 2024) ........................ 6, 8, 11

*In re Marriott Int'l Inc.*,
  440 F. Supp. 3d 447 (D. Md. 2020) ................................................ 9, 18

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
  603 F. Supp. 3d 1183 (S.D. Fla. 2022) .................................. 7, 10, 13, 16

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
  No. 3:19-CV-2284, 2020 WL 2214152 (S.D. Cal. May 7, 2020) .......................... 19

*In re United States OPM Data Sec. Breach Litig.*,
  928 F.3d 42 (D.C. Cir. 2019) ..................................................... 6

*J.L.'s Plaza 93, LLC v. Capitol Specialty Ins. Corp.*,
  No. 8:19-cv-184, 2019 WL 8063274 (D. Neb. Oct. 3, 2019) ................................ 20

*Johnson v. Nice Pak Prods., Inc.*,
  736 F.Supp.3d 639 (S.D. Ind. 2024) .................................................. 21

*Klanseck v. Anderson Sales and Serv., Inc.*,
  393 N.W.2d 356 (Mich. 1986) ...................................................... 20

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941) ............................................................... 11

*Louisiana v. Centers for Disease Control & Prevention*,
  No. 6:22-CV-00885, 2022 WL 1604901 (W.D. La. May 20, 2022) ........................ 2

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ............................................................... 2

*Mackey v. Bank of Am., N.A.*,
  No. 4:18-CV-3271, 2020 WL 6799161 (S.D. Tex. Nov. 19, 2020) ...................... 15

*McFarlane v. Altice, USA, Inc.*,
  524 F.Supp.3d 264 (S.D.N.Y. 2021) ................................................ 23

*McMorris v. Carlos Lopez & Associates*,
995 F.3d 295 (2d Cir. 2021).................................................................... 3, 5

*Merrell v. 1st Lake Properties, Inc.*,
717 F.Supp.3d 512 (E.D. La. 2024)............................................................. 21

*Orion Marine Constr., Inc. v. Coyle*,
No. 4:17-cv-00522, 2018 WL 1251873 (S.D. Tex. Mar 12, 2018) ........................................ 11

*Perlaki v. J.B. Poindexter & Co., Inc.*,
No. 4:24-cv-01649, 2025 WL 754503 (S.D. Tex. Mar. 10, 2025) ........................................ 4

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985)............................................................................ 12

*Roma v. Prospect Medical Holdings, Inc.*,
No. 23-3216, 2024 WL 3678984 (E.D. Pa. Aug. 6, 2024) ...................................... 19

*Smallman v. MGM Resorts Int'l*,
638 F. Supp. 3d 1175 (D. Nev. 2022)......................................................... 8

*Smith Int'l, Inc. v. Egle Grp., LLC*,
490 F.3d 380 (5th Cir. 2007) ................................................................. 12

*Smith v. Am. Pain and Wellness, PLLC,*
747 F. Supp. 3d 989 (E.D. Tex. 2024)....................................................... 13

*Smith v. CitiMortgage, Inc,*
2012 WL 1080593 (E.D. Tex. Mar. 30, 2012) ............................................... 19

*Smith v. CitiMortgage, Inc*,
2012 WL 629058 (E.D. Tex. Feb. 27, 2012) ............................................... 19

*Solomon v. ECL Grp., LLC*,
No. 1:22-CV-526, 2023 WL 1359662 (M.D.N.C. Jan. 31, 2023) .......................... 10

*Taylor et al v. UniversalPegasus International LLC,*
Case No. 4:24-cv-04802, Minute Order (S.D. Tex. June 25, 2025) .......................... 13

*Torrington Co. v. Stutzman*,
46 S.W.3d 829 (Tex. 2000)................................................................... 14

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021)........................................................................... 7

*Turner v. Pleasant*,
663 F.3d 770 (5th Cir. 2011) ................................................................ 3

*Walker v. Walker*,
  631 S.W.3d 259 (Tex. App.—Houston [14th Dist.] 2020) ...................................................... 24

*Webb v. Injured Workers Pharmacy, LLC*,
  72 F.4th 365 (1st Cir. 2023) .............................................................................................. 3, 5, 19

*Williams ex rel. Raymond v. Wal-Mart Stores East, L.P.*,
  99 So.3d 112 (Miss. 2012) ......................................................................................................... 20

*Williams v. Bienville Orthopedic Specialists, LLC*,
  737 F. Supp. 3d 411 (S.D. Miss. 2024) ...................................................................................... 4

*Wynne v. Audi of Am.*,
  No. 21-CV-08518-DMR, 2022 WL 2916341 (N.D. Cal. July 25, 2022) ................................ 7

*Yumilicious Franchise, LLC v. Barrie*,
  819 F.3d 170 (5th Cir. 2016) ...................................................................................................... 3

*Zimmerman v. Highmark, Inc.*,
  780 F.Supp.3d 588 (W.D. Pa. 2025) ......................................................................................... 14

**Statutes**

Federal Trade Commission Act,
  15 U.S.C. § 45 .................................................................................................................. 1, 20, 21

Gramm-Leach Bliley Act,
  15 U.S.C. § 6801, *et seq.* ................................................................................................. 1, 20, 21

**Other Authorities**

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (AM. L. INST. 1971) ................................ 12

**Rules**

Fed. R. Civ. P. 15 .......................................................................................................................... 25

Plaintiffs Maria Sanchez, Ernest Williams, Ebony White, Steven Stapp, and Timothy Kirker ("Plaintiffs") hereby submit this opposition to Defendant's Motion to Dismiss ("Mot."), at ECF No. 41. Defendant New Era Enterprises, Inc. ("Defendant" or "New Era") challenges the sufficiency of Plaintiffs' allegations under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). However, the law does not allow Defendant to escape responsibility for its negligent data security practices by leaving Plaintiffs and Class Members to bear the consequences. Plaintiffs have plausibly alleged Article III standing and viable claims for relief, and the Motion should be denied.

## I.    INTRODUCTION AND FACTUAL BACKGROUND

The underlying litigation stems from Defendant's massive and preventable data breach that resulted in the ***access*** to, and ***exfiltration*** of, Plaintiffs' and Class Members' personally identifiable information ("PII") and protected health information ("PHI") (collectively, "Private Information"). Defendant is a life insurance company and, as part of its for-profit business, receives and maintains the Private Information of thousands of its customers, which Defendant publicly promises to keep confidential. Consolidated Class Action Complaint ("CAC"), ¶¶ 2, 3-5, 31-32. Thus, Defendant has and had obligations stemming from the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, the Gramm-Leach Bliley Act ("GLBA"), 15 U.S.C. § 6801, *et seq.*, common law, contract, and industry standards, to keep Plaintiffs' and Class Members' Private Information confidential and protected from unauthorized disclosures. *Id.* ¶ 38. Unfortunately, Defendant failed to adhere to these obligations, as demonstrated by the foreseeable, and wholly preventable, data breach of Defendant's network.

As a result of Defendant's data security deficiencies and failure to protect the Private Information entrusted to it, unauthorized cybercriminals infiltrated and gained unfettered access to Defendant's inadequately secured network between December 9, 2024 and December 18, 2024,

1

and **"*copied*"** files containing the sensitive information of its consumers (the "Data Breach"). *Id*. ¶ 34. The Private Information stolen in the Data Breach included Plaintiffs' and Class Members' full names, dates of birth, Social Security numbers, addresses, health insurance policy numbers, Medicare identification numbers, and other data related to medical treatment. *Id.* ¶ 5. As a result of the Data Breach, cybercriminals obtained everything needed to commit identity theft and wreak havoc on the financial and personal lives of Plaintiffs and the Class. Indeed, in addition to the theft of their Private Information, Plaintiffs have also suffered actual misuse of their Private Information, including: (i) discovering their Private Information has been posted to the dark web; (ii) cybercriminals attempting to use their Private Information to access financial accounts; and (iii) experiencing a significant increase in spam calls and texts. *Id.* ¶¶ 170, 184, 198, 212. In response, Plaintiffs have been forced to take steps to mitigate the harms of identity theft, have experienced emotional distress and diminution in the value of their Private Information, and remain at substantial risk of future harms. *See generally, id.* ¶¶ 152-217.

## II.    LEGAL STANDARD

To establish Article III standing, three requirements must be met: (1) an injury that is "concrete, particularized and actual or imminent"; (2) that is "fairly traceable to the challenged action"; and (3) that is "redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citation omitted). Further, "[o]nly one party with standing is required to establish Article III jurisdiction." *Louisiana v. Centers for Disease Control & Prevention*, No. 6:22-CV-00885, 2022 WL 1604901, at *10 (W.D. La. May 20, 2022).

Similarly, in ruling on a motion to dismiss under Rule 12(b)(6), the Court "take[s] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016). A claim should proceed where it is facially plausible, meaning that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely should be granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011).

## III.    ARGUMENT

### A.    Plaintiffs Have Standing to Pursue their Claims

To assess standing in the data breach context, the Northern District of Texas recently adopted the three part test first articulated in *McMorris v. Carlos Lopez & Associates*, 995 F.3d 295 (2d Cir. 2021) and since adopted by the First and Third Circuits in *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023) and *Clemens v. ExecuPharm Inc.*, 48 F.4th 146 (3d Cir. 2022). The test analyzes whether Plaintiffs' injuries are sufficiently imminent by considering whether: "(1) the data at issue was compromised 'as the result of a targeted attack intended to obtain the plaintiffs' data'; (2) 'at least some part of the compromised dataset has been misused — even if plaintiffs' *particular* data ... has not yet been affected'; and (3) the data at issue 'is more or less likely to subject plaintiffs to a perpetual risk of identity theft or fraud once it has been exposed.'" *Hawkins v. Scout Energy Mgmt., LLC*, No. 3:24-CV-01545-N, 2025 WL 2244327, at *3 (N.D. Tex. Aug. 5, 2025) (quoting *McMorris*, 995 F.3d at 301–02). Courts applying the *McMorris* test analyze the complaint as whole "with no single factor being dispositive to [the] inquiry." *Clemens*, 48 F.4th at 153 (further noting that "misuse is not necessarily required").

3

### 1.    The Risk to Plaintiffs from the Theft of Their Private Information is Actual and Imminent

Defendant's challenge to standing invents a pleading standard that would impermissibly require Plaintiffs to plead every conceivable fact regarding their injuries. *See* Mot. at 6-7 (citing to *Perlaki v. J.B. Poindexter & Co., Inc.*, No. 4:24-cv-01649, 2025 WL 754503, at \*3 (S.D. Tex. Mar. 10, 2025)). However, at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, 'for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Est. of Parker v. Mississippi Dep't of Pub. Safety*, 728 F. Supp. 3d 372, 383 (S.D. Miss. 2024), *aff'd*, 140 F.4th 226 (5th Cir. 2025) (quoting *Lujan*, 504 U.S. at 561). Moreover, *Perlaki* is uninstructive here as the court found that the plaintiff failed to allege information "to suggest that his information is actually in criminal hands. Perlaki does not allege that his PII has been sold on the dark web or to a criminal enterprise; nor does Perlaki allege that any of his PII has actually been misused. Instead, he alleges that his PII *may* be misused in the future." *Perlaki*, 2025 WL 754503, at \*3. And, as the Western District of Louisiana noted with respect to *Williams v. Bienville Orthopedic Specialists, LLC*, 737 F. Supp. 3d 411, 424 (S.D. Miss. 2024), the other case Defendant relies upon, "*Williams* is also distinguishable insofar as the plaintiffs, who the court found lacked standing, alleged only that cybercriminals had accessed their information and that their information 'was in the hands of cybercriminals.'" *Hulse v. Acadian Ambulance Serv. Inc.*, No. 6:24-CV-01011, 2025 WL 1453847, at \*7 (W.D. La. May 19, 2025).

The Court should disregard *Perlaki* and *Williams* as inapplicable and should look to recent, analogous cases to determine whether Plaintiffs have standing. *See Cabezas v. Mr. Cooper Grp. Inc.*, No. 3:23-CV-2453-N, 2025 WL 2053287, at \*7 (N.D. Tex. July 22, 2025) ("Furthermore, Plaintiffs have alleged that their PII was exposed and 'is now on the dark web.' Six Plaintiffs have

4

alleged that they received notices that their PII was on the dark web following the ransom attack.");
*Hawkins*, 2025 WL 2244327, at *5 (same); *Hulse*, 2025 WL 1453847, at *7 (same); *Hays v. Frost & Sullivan, Inc.*, No. 23-CV-01490, 2024 WL 4052741, at *8 (W.D. Tex. Aug. 16, 2024), *report and recommendation adopted*, No. CV SA-23-CA-1490-FB, 2024 WL 4047166 (W.D. Tex. Sept. 4, 2024)). Neither Defendant's own authorities nor others support Defendant's invented standard.

Here, Plaintiffs White, Stapp, and Kirker allege that they received notifications that their Private Information was posted to the dark web following the Data Breach. CAC ¶¶ 184, 198, 212. Thus, imminent risk should be presumed for *all* Plaintiffs as "[t]hat at least some information stolen in a data breach has already been misused also makes it likely that other portions of the stolen data will be similarly misused." *Webb*, 72 F.4th at 376 (citing to *McMorris*, 995 F.3d at 301 ("courts have been more likely to conclude that plaintiffs have established a substantial risk of future injury where they can show that at least some part of the compromised dataset has been misused – even if plaintiffs' *particular* data subject to the same disclosure incident has not yet been affected.")). Accordingly, because multiple Plaintiffs have alleged their Private Information was stolen *and* posted to the dark web, Plaintiffs have satisfied the misuse prong of the *McMorris* analysis.

Next, Plaintiffs have alleged their Private Information was targeted and acquired in the Data Breach. Courts have found such allegations satisfy the *McMorris* analysis. *See Cabezas*, 2025 WL 2053287, at *6 ("The ransom attack used a strategy of exfiltrating customer data in order for the hackers to make a ransom demand for its return."); *Hays*, 2024 WL 4052741, at *6 (citing to *Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276, 288 (2d Cir. 2023)) ("First and foremost, Bohnak has alleged that her PII was exposed as a result of a targeted attempt by a third party to access the data set."); *Hulse*, 2025 WL 1453847, at *7 ("Logically, the risk of harm associated with an unauthorized third-party's mere access to information…is less substantial than

5

the risk posed in a targeted attack by a sophisticated hacker who successfully kidnaps the personal information, holds it for ransom, and then publishes it when the ransom is not paid.").

Finally, the nature of the information stolen in the Data Breach easily allows for the commission of fraud and identity theft, thus satisfying the final *McMorris* factor. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1263 (11th Cir. 2021) ("Given the … data stolen, including Social Security numbers, names, and dates of birth, and the unequivocal damage that can be done with this type of data, we have no hesitation in holding that Plaintiffs adequately alleged that they face a 'material' and 'substantial' risk of identity theft..."); *In re United States OPM Data Sec. Breach Litig*., 928 F.3d 42, 60 (D.C. Cir. 2019) (finding that even if a breach does not expose every piece of information necessary for immediate financial fraud, the stolen data itself is sufficient to enable identity theft). Accordingly, while not necessary to satisfy the standing analysis, all three factors of the *McMorris* test are met and Plaintiffs have alleged more than enough to demonstrate the imminent and actual risk of identity theft arising from the Data Breach.

### 2.    Plaintiffs' Reasonable Mitigation Efforts Confer Standing

Defendant's argument that mitigation efforts do not confer standing fails, as Plaintiffs have shown a real risk of fraud and identity theft. Indeed, "where courts have already established a risk of future harm, emotional distress and mitigation costs, 'when coupled with the risk of harm ... is a concrete injury sufficient to confer standing.'" *Cabezas*, 2025 WL 2053287, at *7 (quoting *Hulse*, 2025 WL 1453847, at *8); *see also Hawkins*, 2025 WL 2244327, at *5. "This conclusion aligns with other circuit precedent, which similarly recognizes mitigation damages as a concrete injury when taken in response to the substantial threat of harm." *In re ESO Sols., Inc. Breach Litig.*, No. 1:23-CV-1557-RP, 2024 WL 4456703, at *5 (W.D. Tex. July 30, 2024). Thus, Plaintiffs are not manufacturing standing in response to a non-appreciable threat. Rather, Plaintiffs were reasonably responding to an actual and imminent threat. *In re 21st Century Oncology Customer Data Sec.*

6

*Breach Litig.*, 380 F. Supp. 3d 1243, 1256 (M.D. Fla. 2019) ("[I]n data breach cases, where courts have found an injury in fact based on an increased risk of identity theft, they have also found an adequate injury in fact based on the harm incurred by protecting against that risk.").

### 3.        Plaintiffs' Loss of Privacy Confers Standing

Next, Defendant argues that Plaintiffs' loss of privacy does not confer standing. Mot. at 9. Following *TransUnion LLC v. Ramirez,* 594 U.S. 413 (2021), courts widely agree that the theft of Private Information in a data breach causes an immediate injury analogous to invasion of privacy. *See, e.g., Bohnak,* 79 F.4th at 285 ("Like the Supreme Court in *TransUnion*, we have no trouble concluding that Bohnak's alleged harm is sufficiently concrete to support her claims for damages. Similar to the publication of misleading information about some of the plaintiffs in *TransUnion*, the core injury here—exposure of Bohnak's private PII to unauthorized third parties—bears some relationship to a well-established common-law analog: public disclosure of private facts.") (internal citation omitted); *Wynne v. Audi of Am.*, No. 21-CV-08518-DMR, 2022 WL 2916341, at *4 (N.D. Cal. July 25, 2022) (similar). Here too, Plaintiffs' alleged loss of privacy is sufficient to confer standing.

### 4.        Concrete Injury Based on the Diminished Value of Private Information

The Court should also reject Defendant's argument that lost or diminished value of personal information is not concrete because "Plaintiffs do not explain *how* their information lost value or that they tried to sell their Private Information and now it's worth less than it was before." Mot. at 10. "[I]n the data breach context, plaintiffs need not reduce their PHI or PII to terms of dollars and cents in some fictitious marketplace where they offer such information for sale to the highest bidder." *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1204 (S.D. Fla. 2022) (collecting cases); *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1191 (D. Nev. 2022) (a "Data Breach devalue[s] Plaintiffs' PII by interfering with their

fiscal autonomy"). There is a "growing trend across courts . . . to recognize the lost property value of personal information." *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 635 (N.D. Cal. 2021).

While some Texas district courts have expressed skepticism toward diminution in value theories,[1] there is no categorical rule rejecting it in all circumstances. In fact, the court in *ESO* made clear that dismissal was based on insufficient allegations—not on a blanket legal prohibition. 2024 WL 4456703 at *7. By contrast, Plaintiffs plausibly allege their Private Information lost market value as a result of the Data Breach. Plaintiffs detail how their information holds value in both legitimate and black markets and allege the Data Breach impacted that value. *See, e.g.*, CAC ¶ 119 (explaining the Data Breach was financially motivated because cybercriminals engage in targeted cyberattacks against companies like Defendant to obtain information they can monetize on the black market); *id.* ¶ 137 ("Private Information can sell for as much as $363 per record, according to the Infosec Institute."); *id.* ¶ 138 ("An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth roughly $200 billion."). Thus, it is difficult to doubt, especially at this early stage of the proceedings, that the value of Plaintiffs' now-compromised Private Information has decreased.

### 5.    Plaintiffs Adequately Plead the Loss of The Benefit of their Bargain

Plaintiffs sufficiently allege that they did not receive the benefit of their bargain with Defendant sufficient to demonstrate standing. As courts have repeatedly held, when plaintiffs "contend that [they] paid more for [a service] than they otherwise would have paid, or bought it when they otherwise would not have done so they have suffered an Article III injury in fact." *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1146 (9th Cir. 2024) (cleaned up). In the data breach context, "it is enough to allege that there was an explicit or implicit contract for data

---

[1] *ESO,* 2024 WL 4456703, at *6-7 (W.D. Tex. July 30, 2024).

security, that plaintiffs placed value on that data security, and that Defendants failed to meet their representations about data security." *In re Marriott Int'l Inc.*, 440 F. Supp. 3d 447, 465–66 (D. Md. 2020) (finding that plaintiffs adequately alleged injury based on their benefit of the bargain theory); *In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*, No. 2:23-cv-01447-ART-BNW, 2025 WL 2393024, at *5-6 (D. Nev. Aug. 15, 2025) (finding that plaintiffs who alleged that they paid for defendant's hotel rooms have alleged injury in fact under an overpayment/benefit of the bargain theory of harm). In cases where the court has found that plaintiffs failed to plead a loss of a benefit of the bargain, it is because the plaintiffs failed to adequately plead that they bargained for and paid for the protection of their information. *See, e.g.*, *Cabezas*, 2025 WL 2053287, at *6.

In contrast, Plaintiffs here allege that they paid money, or money was paid on their behalf, to Defendant in exchange for services, and that they would not have paid or paid as much, had they known that Defendant's data security practices were inadequate. CAC ¶ 285. Specifically, Plaintiffs allege that "[w]hen agreeing to pay Defendant and/or its agents for insurance services, Plaintiffs and other reasonable consumers understood and expected that they were, in part, paying for the product and/or service and necessary data security to protect the Private Information" and that "Defendant did not provide the expected data security." *Id.* ¶ 151. Accordingly, Plaintiffs have sufficiently alleged the loss of the benefit of their bargain adequate to confer standing.

### 6.    Spam Emails and Calls Are a Cognizable Injury for Standing

Plaintiffs Williams, White, and Stapp allege that they have experienced an increase in spam phone calls and emails since the Data Breach and have lost time and productivity from taking time to screen those spam calls and emails. *See* CAC ¶¶ 170, 171,184, 185, 198. Defendant attempts to dismiss this harm because phone numbers and email addresses were not impacted in the Data Breach. *See* Mot. at 12. This argument fails and ignores how cybercriminals operate today.

Plaintiffs explain how cybercriminals use "Fullz" packages, *see* CAC ¶¶ 124-128, to

9

initiate phishing attacks. Specifically, Plaintiffs explain that the development of "Fullz" packages means that the stolen Private Information from the Data Breach "can easily be used to link and identify it to Plaintiffs' and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers." *Id.* ¶ 126. Courts have found identical allegations to be sufficient for standing. In *Fox v. Iowa Health System*, the court found allegations concerning "Fullz" packages allowed for a reasonable inference "that scammers took the health information from the data breaches and cross-referenced it with [the plaintiff's] contact information from another source." 399 F. Supp. 3d 780, 792 (W.D. Wis. 2019); *see also In re Mednax*, 603 F. Supp. 3d at 1206. Numerous courts across the country have found an increase in spam communications following a data breach constitutes an injury sufficient to confer standing. *See, e.g.*, *Solomon v. ECL Grp., LLC*, No. 1:22-CV-526, 2023 WL 1359662, at *4 (M.D.N.C. Jan. 31, 2023) (finding increased receipt of spam following data breach "sufficient to satisfy Article III standing"); *Farley v. Eye Care Leaders Holdings, LLC*, No. 1:22-cv-468, 2023 WL 1353558, at *4 (M.D.N.C. Jan. 30, 2023) (same); *Baldwin v. Nat'l W. Life Ins. Co*., No. 2:21-CV-04066-WJE, 2021 WL 4206736, at *4 (W.D. Mo. Sept. 15, 2021) (same).

At this stage, Plaintiffs need only plausibly allege that their injuries are fairly traceable to the Data Breach. Plaintiffs' increase in scam communications, consistent with the known use of "Fullz" packages, easily meets that standard.

### 7.    Emotional Distress Constitutes a Concrete Injury

Defendant argues that Plaintiffs' allegations of fear, anxiety, stress, and/or concern are insufficient to confer standing because they are not accompanied by another form of actual harm. Mot. at 13. However, this argument ignores Plaintiffs' allegations and applicable authorities. In the Fifth Circuit, emotional distress caused by a data breach, and the resulting risk of future harm, constitutes a concrete injury sufficient to confer standing. *See, e.g., Hawkins*, 2025 WL 2244327,

10

at *5 (holding that plaintiffs adequately alleged standing based on emotional distress stemming from risk of future harm); *see also ESO*, 2024 WL 4456703, at *6 (finding same where "[p]laintiffs allege that they have 'suffered fear, anxiety, and stress' and are 'very worried' as a result of the data breach.") (cleaned up and citations omitted); *Hulse*, 2025 WL 1453847, at *8 (finding that emotional distress is a concrete injury sufficient to confer standing and noting that "[a]lthough [defendant] argues Plaintiffs' emotional distress allegations are conclusory, the Court finds the totality of the complaint's allegations show that Plaintiffs sustained emotional distress"). Here, each of the Plaintiffs allege that they have experienced stress, anxiety, and concern due to the loss of their privacy and concern over the impact of cybercriminals accessing and misusing their Private Information. CAC ¶¶ 158, 173, 187, 201, 215. These allegations fall squarely within what courts have recognized as sufficient to establish injury at the pleading stage.

### B.    Plaintiffs State Claims for Relief Pursuant to Rule 12(b)(6)

#### 1.    Choice of Law

Determination of "which state's law governs is a question of law for the court to decide." *Orion Marine Constr., Inc. v. Coyle,* No. 4:17-cv-00522, 2018 WL 1251873, at *1 (S.D. Tex. Mar 12, 2018). "[F]ederal courts sitting in diversity apply the forum state's rules for conflict of laws." *Heritagemark LLC v. Unum Life Ins. Co. of Am.*, No. 4:22-cv-04513, 2023 WL 8622998, at *2 (S.D. Tex. Dec. 13, 2023) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Where no choice-of-law contractual clause exists, Texas courts use the Restatement's "most significant relationship" test. *Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 723 (5th Cir. 2010). This means courts must consider various factors, including "the place of contracting," "the place of performance," and the "place of incorporation and place of business of the parties." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (AM. L. INST. 1971) (listing five factors). This analysis must be employed whenever the relevant states' laws differ. *Bailey*, 609 F.3d at 722; *Torrey v. Infectious*

11

*Diseases Soc'y of Am.*, 86 F.4th 701, 704 (5th Cir. 2023). Moreover, courts must make a significant effort "to ensure that the choice of [a state's] law is not arbitrary or unfair" to protect each Parties' due process rights. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985).

Plaintiffs are residents and citizens of Pennsylvania, Mississippi, Nebraska, Michigan, and Texas, and Defendant is a resident of Texas. CAC ¶¶ 22-27. For purposes of resolving this motion, Plaintiffs agree with application of Texas law in determining whether Plaintiffs state claims for negligence, implied contract, and unjust enrichment. With regard to Plaintiffs' negligence *per se* claim, Defendant's argument for dismissal should be rejected as premature, given the absence of a choice of law analysis. *See Cabezas*, 2025 WL 2053287, at *12 ("Unlike the other common law claims….because the law governing negligence *per se* varies between states, the Court defers judgment on this claim until choice of law analysis is completed at the class certification stage."). Plaintiffs reserve their right to further brief choice of law following discovery.

### 2.    Plaintiffs Sufficiently Plead Damages for Their Common Law Claims

"To support a claim for negligence, a plaintiff must establish (1) a legal duty owed by Defendant to plaintiff; (2) a breach of that duty, and (3) damages proximately caused by the breach." *Bruno v. Donohoe*, 754 F. Supp. 3d 737, 748 (W.D. Tex. 2024). To state a claim for breach of contract, implied or express, a plaintiff must establish, *inter alia*, "damages sustained by the plaintiff as a result of the breach." *Hawkins*, 2025 WL 2244327, at *7 (quoting *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citation omitted)). Defendant challenges Plaintiffs' common law claims based on a purported lack of actual harm. Mot. at 16. However, this argument fails as Plaintiffs allege they suffered not only the (1) present and heightened risk of future identity theft, but additional injuries in the form of (2) diminution in value of their Private Information; (3) loss of time, productivity, and money incurred mitigating the harms of the Data Breach; (4) emotional distress; and (5) loss of the benefit of their bargain, all of which constitute

12

damages sufficient to sustain their claims. CAC ¶¶ 156-161, 167-175, 181-189, 195-203, 209-217.

Generally, courts considering similar allegations, have found that a plaintiff who has pleaded a cognizable injury for standing purposes has *ipso facto* pleaded a cognizable injury for the purpose of tort and contract claims. *Bohnak*, 79 F.4th at 289-90 ("Bohnak's alleged injury arising from the increased risk of harm is cognizable for standing purposes, and thus could support a claim for damages."); *Cabezas*, 2025 WL 2053287, at *9-14 (finding that plaintiffs stated plausible negligence and breach of implied contract claims without further discussion of damages); *Hawkins*, 2025 WL 2244327, at *8 (same); *Smith v. Am. Pain and Wellness, PLLC,* 747 F. Supp. 3d 989, 1003 (E.D. Tex. 2024). Although "[d]amages do not necessarily equate with Article III's injury-in-fact requirement…. the Court finds that a reasonable jury could conclude that the injuries discussed in the standing context translate to actual harm in the negligence context. So there is no need to rehash them here." *In re Mednax,* 603 F. Supp. 3d at 1224 (internal citations omitted).

The Court should accept that Plaintiffs allege cognizable damages for their common law claims because they have adequately alleged Article III standing. However, should this Court find that a concrete injury-in-fact to confer standing is not enough, the Court should still find that Plaintiffs have adequately alleged damages. *See Taylor et al v. UniversalPegasus International LLC,* Case No. 4:24-cv-04802, Minute Order (S.D. Tex. June 25, 2025) (declining to dismiss negligence claim in a data breach action where plaintiffs pled damages for risk of future identity theft, lost time and money to mitigate the harms of the breach, and emotional distress); *Bruno*, 754 F. Supp. 3d at 749 (upholding negligence claim where plaintiffs alleged lost time and money spent mitigating the consequences of a data breach, even in the absence of fraudulent charges); *In re Accellion, Inc. Data Breach Litig*., 713 F.Supp.3d 623, 637 (N.D. Cal. 2024) (plaintiffs sufficiently alleged injury for negligence claim where they alleged identity theft in the form of unauthorized

13

charges on their accounts, loss of value of PII, and out of pocket expenses, including for time spent responding to the data breach); *Clemens*, 48 F.4th at 156 ("if the plaintiff's knowledge of the substantial risk of identity theft causes him to presently experience emotional distress," that too is a cognizable injury); *Zimmerman v. Highmark, Inc.*, 780 F.Supp.3d 588, 600 (W.D. Pa. 2025) ("[T]he law is now relatively well-settled that loss of time on mitigation efforts, payments made for monitoring, and present emotional distress…give concreteness to a plaintiff's injury.").

### i.      Increased Risk of Harm

Defendant argues that damages cannot be established by the heightened risk of harm from identity theft and fraud suffered by Plaintiffs. Mot. at 16. However, Courts applying Texas law have recognized that where a defendant voluntarily assumes a duty and is negligent in performing it, a plaintiff may seek damages for an increased risk of harm.

> [T]o establish a negligent undertaking, a plaintiff must show: (1) the defendant undertook to perform services that it knew or should have known were necessary for the plaintiff's protection; (2) the defendant failed to exercise reasonable care in performing those services; and either (3) the plaintiff relied upon the defendant's performance; or (4) the defendant's performance increased the plaintiff's risk of harm.

*Dukes v. Philip Johnson/Alan Ritchie Architects, P.C.*, 252 S.W.3d 586, 598 (Tex. App. 2008) (citing *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 839 (Tex. 2000)). Here, Plaintiffs satisfy factors (1), (2), and (3) by alleging: (i) Defendant undertook to safeguard Private Information knowing it was necessary for Plaintiffs' protection; (ii) Defendant failed to exercise reasonable care in safeguarding the Private Information; and (iii) Plaintiffs relied on Defendant to safeguard the Private Information. CAC ¶¶ 234-263. Regarding factor (4), "[i]n determining whether there is an increased risk of harm, the Court must compare 'the risk of harm resulting from the alleged negligence to the risk of harm existing before, not during, the undertaking." *See Mackey v. Bank of Am., N.A.*, No. 4:18-CV-3271, 2020 WL 6799161, at *3 (S.D. Tex. Nov. 19, 2020) (quoting

14

*Entex, A Div. of Noram Energy Corp. v. Gonzalez*, 94 S.W.3d 1, 9 (Tex. App.--Houston [14th Dist.] 2002, *pet. denied*)). Here, Plaintiffs allege that their risk of identity theft and fraud is greater after the Data Breach than it was before the Data Breach because an unauthorized actor **stole** Plaintiffs' and Class Members' Private Information. CAC ¶¶ 264-266. *See Cabezas*, 2025 WL 2053287, at *7 (citing *McMorris,* 995 F.3d at 302) ("[n]aturally, the dissemination of high-risk information such as Social Security numbers and dates of birth – especially when accompanied by victim's names – makes it more likely that those victims will be subject to future identity theft.").

Moreover, under Texas law, the increased risk of identity theft and fraud resulting from a data breach has been recognized to be a cognizable harm. *See Hawkins*, 2025 WL 2244327, at *8 ("[T]he Court determines that Plaintiffs have sufficiently alleged that they suffered damages. They assert that as a result of the data breach, their PII has been sold or exposed on the dark web, and they have suffered an increased risk of future harm."). While Defendant claims this case is "no different" from the cases it cited in support of its argument, the cases are inapposite and non-binding. *See Gardiner v. Walmart Inc.,* No. 4:20-cv-04618-JSW, 2021 WL 2520103, at *4 (N.D. Cal. Mar. 5, 2021) (plaintiff did not allege PII was stolen or any misuse had occurred); *Alonso v. Blue Sky Resorts, LLC,* 179 F. Supp. 3d 857, 865 (S.D. Ind. 2016) (data breach where only names, credit card numbers, and card expiration dates were compromised meant future risk of injury was "essentially nonexistent" as plaintiffs canceled credit cards before fraudulent charges occurred).

ii.  Diminished Value of Private Information

For the same reasons discussed above regarding Article III standing, Plaintiffs have alleged cognizable damages related to the diminished value of their Private Information. Here, Plaintiffs have adequately pleaded that their Private Information lost market value as a result of the Data Breach. CAC ¶¶ 72-88, 136-146, 157, 175, 189, 203, 217. And even though Defendant contends

15

that "some unspecified amount of diminished value" is "devoid of factual support," (Mot. at 17-18), "in the data breach context, plaintiffs need not reduce their Private Information to terms of dollars and cents in some fictitious marketplace where they offer such information for sale to the highest bidder." *In re Mednax*, 603 F. Supp. 3d at 1204. It is well-established that the value of Private Information diminishes when it is no longer capable of being treated as a commodity. Plaintiffs adequately alleged that Private Information can be bought or sold and therefore the value of their now-compromised Private Information has decreased. CAC ¶¶ 119; 138; 140. Plaintiffs have thus alleged cognizable damages related to the diminished value of their Private Information.

### iii.   Lost-Time Damages

Defendant's argument that "in Texas there is no liability for wasting another person's time" (Mot. at 18) conflates the elements of Plaintiffs' well-pled common law claims. Plaintiffs' loss of time, money, and productivity mitigating the consequences of the Data Breach are damages caused by Defendant's breach of its duty to Plaintiffs for both the negligence and implied contract claims. *See* CAC ¶¶ 170, 171,184, 185, 198. Further, the cases cited by Defendant are misplaced and non-binding. Mot. at 18. Courts in Texas have found that, in data breach cases, lost time satisfies the damages element of negligence and implied contract claims. *See Cabezas*, 2025 WL 2053287, at *7 (finding "where courts have already established a risk of future harm, emotional distress and mitigation costs, when coupled with the risk of harm . . . is a concrete injury sufficient to confer standing[]" and without further comment on damages, concluded that negligence and implied contract claims were satisfied); *Hawkins*, 2025 WL 2244327, at *8 (same); *Bruno*, 754 F. Supp.3d at 749 ("the compromised personal information and lost time and resources mitigating the effects of the data breach constitute a cognizable injury…[therefore] [t]he [c]ourt finds [p]laintiff has sufficiently pleaded damages to state a claim for negligence.").

iv.   Emotional Distress

Not only does emotional distress that is caused by a data breach and the resulting risk of future harm constitute a concrete injury sufficient to confer standing, it also constitutes a cognizable injury for both negligence and breach of implied contract claims. *See Cabezas*, 2025 WL 2053287, at *7 ("emotional distress…when coupled with the risk of harm . . . is a concrete injury sufficient to confer standing[]" and holding that plaintiffs adequately alleged damages for negligence and implied contract claims, without further discussion of damages apart from standing); *Hawkins*, 2025 WL 2244327, at *8 (same). As discussed, Plaintiffs allege stress, anxiety, and concern due to the loss of their privacy and concern over the impact of cybercriminals accessing and misusing their Private Information. CAC ¶¶ 158, 173, 187, 201, 215.

v.   Benefit of the Bargain

Plaintiffs sufficiently, and specifically, allege that they overpaid for their insurance services and did not receive the benefit of their bargain. *See* CAC ¶ 151. Plaintiffs further alleged that "[w]hen agreeing to pay Defendant and/or its agents for insurance services, Plaintiffs and other reasonable consumers understood and expected that they were, in part, paying for the product and/or service and necessary data security to protect the Private Information" and that "Defendant did not provide the expected data security." *Id*.; ¶ 285. Here, "it is enough to allege that there was an explicit or implicit contract for data security, that plaintiffs placed value on that data security, and that Defendants failed to meet their representations about data security." *In re Marriott*, 440 F. Supp. 3d at 465–66 (benefit of the bargain injury adequately alleged).

### 3.   Plaintiffs' Tort Claims are not Barred by the Economic Loss Rule

Plaintiffs' tort claims are not barred by the economic loss rule. In Texas, the economic loss rule bars the pursuit of tort claims where "the damage sought by the plaintiff in a tort action is only the economic loss to the subject of a contract itself." *ConocoPhillips Co. v. Koopmann*, 542 S.W.3d

643, 664 (Tex. App. 2016), *aff'd on other grounds*, 547 S.W.3d 858 (Tex. 2018). The economic loss rule is not implicated where the defendant "breaches a legal duty owed to the plaintiff that is independent of the contractual undertaking and that results in damage to the plaintiff above and beyond the mere economic loss of the contractual benefit itself." *Koopmann*, 542 S.W.3d at 664–65. As alleged, Defendant owed duties to Plaintiffs not only under contract, but also under the FTC Act, the Gramm-Leach-Bliley Act, and the common law to prevent foreseeable harm. CAC ¶¶ 38, 240-45. Plaintiffs' injuries are not limited to the "mere economic loss of the contractual benefit," but include damages such as imminent risk of fraud and identity theft, dissemination of their Private Information over the dark web, lost time, and mitigation costs—all of which extend beyond the scope of any contract. *Koopmann*, 542 S.W.3d at 664–65; CAC ¶¶ 7, 14, 265-66. Thus, the economic loss rule is inapplicable.

Courts applying Texas law in analogous data breach cases have held that defendants' duties to safeguard their customers' data did not arise solely from contractual considerations and thus plaintiffs' tort claims are not barred by the economic loss rule. *See Hawkins*, 2025 WL 2244327, at *9 (allowing plaintiffs' negligence claims to proceed because the "duty to safeguard data does not arise solely out of the implied contract, and the claimed loss extends beyond the economic losses of the benefits under the contract"); *Cabezas*, 2025 WL 2053287, at *11 (same). Defendant has not presented a compelling reason why the Court should deviate from these rulings. Moreover, Plaintiffs have sufficiently alleged non-economic damages like emotional distress, increase in spam calls, lost time, and dissemination of information over the dark web that fall outside the purview of the rule. CAC ¶¶ 158-59, 170-71, 173-74, 184-85, 187-88, 198-99, 201-02, 212-13, 215-16; *see Smith v. CitiMortgage, Inc*, 2012 WL 629058, at *6 n. 5 (E.D. Tex. Feb. 27, 2012)*, R. & R. adopted,* 2012 WL 1080593 (E.D. Tex. Mar. 30, 2012) ("Plaintiff's damages appear to include

18

damages other than the economic losses involved, including mental anguish, lost time, and loss of creditworthiness."); *see Webb,* 2023 WL 5938606, at *3 ("plaintiffs have alleged sufficient non-monetary harm, including palpable emotional distress"); *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.,* No. 3:19-CV-2284, 2020 WL 2214152, at *4 (S.D. Cal. May 7, 2020) (same)*.*

Given the above, the economic loss rule does not bar Plaintiffs from recovering in tort.

### 4.      Plaintiffs State a Claim for Negligence *Per Se*

Dismissal of Plaintiffs' negligence *per se* claim is premature absent a full choice-of-law analysis. Unlike Plaintiffs' other common law claims, "the law governing negligence *per se* varies drastically between states." *Hawkins*, 2025 WL 2244327, at *10; *see also Cabezas*, 2025 WL 2053287 (finding that, because a law other than Texas law may apply, and because the law governing negligence *per se* varies between states, judgment on plaintiffs' negligence *per se* claim is deferred until completion of a choice of law analysis at the class certification stage). Here, at least five (5) states' laws are implicated—Texas, Pennsylvania, Nebraska, Mississippi, and Michigan—each with their own unique negligence *per se* doctrines.[2] As such, because a body of law other than Texas law may apply, the Court should defer judgment on this claim until a fulsome choice of law analysis can be completed at the class certification stage.

---

[2] *See, e.g.*, *Roma v. Prospect Medical Holdings, Inc.*, No. 23-3216, 2024 WL 3678984, at *10 (E.D. Pa. Aug. 6, 2024) (allowing plaintiffs to use violations of the FTC Act to support negligence claim and recognizing that "Pennsylvania…courts [do not] require a private right of action be available for a statute to serve as the hook for a negligence per se theory."); *J.L.'s Plaza 93, LLC v. Capitol Specialty Ins. Corp.*, No. 8:19-cv-184, 2019 WL 8063274, at *3 (D. Neb. Oct. 3, 2019) (recognizing that violation of statute or regulation may be evidence of breach of a duty even if it does not provide for a private right of action); *Williams ex rel. Raymond v. Wal-Mart Stores East, L.P.*, 99 So.3d 112, 116 (Miss. 2012) (finding negligence per se does not create a new cause of action but "is a form of ordinary negligence that enables the courts to use a penal statute to define a reasonably prudent person's standard of care."); *Klanseck v. Anderson Sales and Serv., Inc.*, 393 N.W.2d 356, 360 (Mich. 1986) (finding negligence per se creates a rebuttable presumption of negligence under Michigan law).

Nonetheless, many courts have found that violations of the FTC Act and GLBA support a claim for negligence *per se* in the data breach context. *See, e.g., In re Capital One Data Sec. Breach Litig.*, 488 F.Supp.3d 374, 407 (E.D. Va. 2020) (recognizing negligence *per se* claim based on violations of Section 5 of the FTC Act because "plaintiffs whose information was allegedly compromised by a data breach fit within the class of persons sought to be protected from the type of harm proscribed by the statute."); *In re Equifax,* 371 F. Supp. 3d at 1174 (upholding negligence *per se* claim where plaintiffs alleged that defendant's "failure to maintain reasonable data security measures to protect consumer information violates the Safeguards Rule, which constitutes a violation of the GLBA."); *First Choice Federal Credit Union v. Wendy's Co.*, No. 16-506, 2017 WL 9487086, at *4 (W.D. Pa. Feb. 13, 2017), *R&R adopted*, 2017 WL 1190500 (W.D. Pa. Mar. 31, 2017) (finding violation of Section 5 of the FTC Act to constitute negligence *per se*). Here, Plaintiffs allege: (i) Defendant violated Section 5 of the FTC Act and the Safeguards Rule, which implements Section 501(b) of the GLBA, 15 U.S.C. § 6801(b); (ii) they are consumers within the class of persons that Section 5 of the FTC Act and GLBA were intended to protect; and (iii) the harm suffered is the type of harm Section 5 of the FTC Act and GLBA intended to guard against. CAC ¶¶ 107, 274–75. As plead, Plaintiffs' negligence *per se* claim is sound.

Furthermore, the absence of a private right of action under the FTC Act and GLBA does not preclude Plaintiffs' negligence *per se* claim based on violations of these statutes. Plaintiffs are not asserting a private right of action under the FTC Act or GLBA. Rather, Plaintiffs invoke the FTC Act and GLBA as the applicable duty of care to protect Plaintiffs' and Class Members' Private Information. *Merrell v. 1st Lake Properties, Inc.*, 717 F.Supp.3d 512, 521 (E.D. La. 2024) (finding that "Section 5 [of the FTC Act], in conjunction with federal caselaw and administrative orders and guidance interpreting it, provides specific standards of care for purposes of pleading a duty as

20

part of a negligence claim."); *In re Equifax,* 371 F.Supp.3d at 1174 ("[T]he Safeguards Rule provides an ascertainable standard of conduct permitting it to serve as the basis for a negligence per se claim."); *Johnson v. Nice Pak Prods., Inc.*, 736 F.Supp.3d 639, 649 (S.D. Ind. 2024) (plaintiffs plausibly stated negligence *per se* claim p by failing to meet the standard of care as set forth by the FTC Act). Thus, this claim should not be dismissed.

### 5.      Plaintiffs State a Claim for Breach of Implied Contract

Under Texas law, the elements required to plead the existence of a valid implied contract include: (i) offer; (ii) acceptance; (iii) mutual assent or a meeting of the minds; (iv) each party's consent to the terms; and (v) execution and delivery of the contract with the intent that it be mutual and binding. *DeClaire v. G & B McIntosh Family Ltd. P'Ship.*, 260 S.W.3d 34, 44 (Tex. App.— Houston [1st Dist.] 2008, no pet.). An implied contract "arises from the acts and conduct of the parties, it being implied from the facts and circumstances that there was a mutual intention to contract." *Haws & Garrett General Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W2d 607, 609 (Tex. 1972). Accordingly, the Court should look to what a reasonable customer would understand and expect when providing sensitive information to Defendant. Defendant challenges the meeting of the minds element by arguing that Plaintiffs have not sufficiently alleged an "objective manifestation of assent" by Defendant, while attempting to minimize representations made in its own privacy policy. Again, Defendant's argument misses the mark.

First, Defendant's argument that representations made in its privacy policy do not constitute outward manifestations of assent ignores Texas case law. *See, e.g., Cabezas*, 2025 WL 2053287, at *10 (finding "an implied contract is sufficiently alleged where the plaintiffs plead that an implied contract was created by assurance of a privacy policy…."); *Hays*, 2024 WL 4052741, at *9 (finding implied contract exists in data breach case and "privacy policies like the one described in [p]laintiff's [c]omplaint have been recognized as a plausible basis for finding that a

21

valid implied contract exists under various state laws across the country.") (citing cases). Here, Plaintiffs specify multiple representations made in Defendant's privacy policy reflecting promises to safeguard customers' Private Information in exchange for payment for insurance services. CAC ¶ 32. Thus, Defendant's portrayal of Plaintiffs' allegations as merely "relying on unspecified portions of Defendant's Privacy Policy" (Mot. at 23) is a clear misrepresentation of Plaintiffs' well-pleaded and specific allegations.

Next, courts within the Fifth Circuit have held the formation of an implied contract to safeguard Private Information is sufficiently alleged where plaintiffs allege that customers were required to provide such information as a condition of receiving a defendant's services. *See Hawkins*, 2025 WL 2244327, at *7 (finding sufficient plaintiffs' allegations that "an implied contract was created in the implied promise to protect PII when customers are required to provide PII as a condition of receiving defendant's services."); *Hulse*, 2025 WL 1453847, at *13 ("It is difficult to imagine how, in our day and age if data and identity theft, the mandatory receipt of Social Security numbers or other [Private Information] would not imply the recipient's assent to protect the information sufficiently." (quoting *McFarlane v. Altice, USA, Inc.*, 524 F.Supp.3d 264, 282 (S.D.N.Y. 2021)). Here, Plaintiffs allege they were required to deliver their Private Information as a condition of receiving insurance services from Defendant. CAC ¶¶ 50, 285. Therefore, by providing their Private Information as a mandatory condition of obtaining insurance services, Plaintiffs entered into implied contracts with Defendant, under which Defendant agreed to safeguard and protect such Private Information.

Further, Defendant's reliance on the out-of-circuit case—*Griffey v. Magellan Health Inc.*, 562 F.Supp.3d 34, 52 (D. Ariz. 2021)—is misplaced. In *Griffey*, the Court dismissed the plaintiffs' breach of implied contract claim because the plaintiffs failed to allege the "specific terms of the

22

implied contracts." *Id*. This does not defeat Plaintiffs' claim here, because Plaintiffs allege the specific contract terms Defendant breached. CAC ¶ 291. Thus, unlike in *Griffey*, the Court here is not left to "guess how [] [Defendant] failed to perform [its] contractual obligations" because Plaintiffs allege Defendant breached all of the contractual obligations listed in the Complaint by failing to safeguard Plaintiffs' and Class Members' Private Information, resulting in the Data Breach. 562 F. Supp. 3d at 51. Thus, *Griffey*'s holding does not impact the outcome here.

Finally, as a last-ditch effort to dismiss Plaintiffs' breach of implied contract claim, Defendant makes the unsupported argument that Plaintiffs have not alleged consideration or compensable damages. Mot. at 25. With respect to consideration, Defendant appears to suggest, albeit in passing, that the preexisting duty rule precludes Plaintiffs' breach of implied contract claim. Defendant fails to identify any preexisting legal obligation, and regardless, this argument fails because Plaintiffs point to multiple independent sources establishing Defendant's duty to safeguard their Private Information beyond any obligations imposed by state or federal law. CAC ¶¶ 31, 38, 290; *see also Fox*, 399 F.Supp.3d at 802 (rejecting preexisting duty argument in data breach case where plaintiffs allege privacy policy includes promises that go beyond state and federal regulations). Moreover, as to damages, Defendant argues that Plaintiffs' breach of implied contract claim fails because Plaintiffs' damages are only for "mental anguish." Mot. at 25. This argument also fails and ignores Plaintiffs' allegations because, as stated above, Plaintiffs suffered multiple damages as a result of Defendant's breach of implied contract beyond mere mental anguish. CAC ¶ 302. Accordingly, Plaintiffs state a claim for breach of implied contract.

### 6.    Plaintiffs State a Claim for Unjust Enrichment

Under Texas law, unjust enrichment "is an equitable concept that arises in situations in which another person has wrongfully secured a benefit or has passively received one in which it would be unconscionable to retain." *Houle v. Casillas*, 594 S.W.3d 524, 554 (Tex. App.—El Paso

23

2019). Defendant argues that Plaintiffs' unjust enrichment claim fails because "Plaintiffs do not allege that Defendant did anything that was fraudulent or that involved duress or undue advantage." Mot. at 25. This argument fails for multiple reasons.

First, Defendant's assertion that a showing of fraud, duress, or undue advantage is ***required*** to prevail on a claim for unjust enrichment is inconsistent with Texas law. The existence of fraud, duress, or the taking of undue advantage is not an element of unjust enrichment, "even though the doctrine is *typically* found to apply under one of those scenarios." *Walker v. Walker*, 631 S.W.3d 259, 266 (Tex. App.—Houston [14th Dist.] 2020) (emphasis added). Indeed, a claim for unjust enrichment "does not depend on the existence of a wrong" and instead arises when a party retains benefits, even passively, under circumstances where it would be unjust to retain them. *Id*.

Regardless, Defendant's argument ignores Plaintiffs' allegations, which plainly allege that Defendant engaged in the taking of undue advantage. Specifically, Plaintiffs allege that they "conferred a monetary benefit on Defendant," (CAC ¶ 307) and that Defendant "profited from Plaintiffs' retained data," (*id*. ¶ 308) but that Defendant failed to secure their Private Information (*id*. ¶ 309), thereby enriching "itself by saving the costs it reasonably should have expended on data security measures" (*id*. ¶ 313). It is unclear how these allegations could be characterized as anything other than "taking undue advantage" of Plaintiffs and the Class. "Defendant has not provided the Court with any authority supporting its argument that Plaintiff[s] cannot plead undue advantage by asserting that Defendant unjustly benefited from shirking its data-security obligations by skimping on security measures and leaving Plaintiff[s] to suffer the consequences." *Hays*, 2024 WL 4052741, at *13. Therefore, Plaintiffs state a claim for unjust enrichment.

24

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied. In the event the Court dismisses the Complaint, Plaintiffs request leave to amend.  *See* Fed. R. Civ. P. 15(a)(2).

Dated: September 5, 2025                         Respectfully Submitted,

By: */s/ Gary M. Klinger*
Gary M. Klinger*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
Email: gklinger@milberg.com

Joe Kendall
Texas Bar No. 11260700
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
214-744-3000
214-744-3015 (Facsimile)
jkendall@kendalllawgroup.com

Jeff Ostrow*
Courtney Maccarone*
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-332-4200
ostrow@kolawyers.com
maccarone@kolawyers.com

Leigh S. Montgomery
**EKSM, LLP**
4200 Montrose Blvd., Suite 200
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455 lmontgomery@eksm.com

A. Brooke Murphy*
**MURPHY LAW FIRM**
4116 Will Rogers Pkwy, Suite 700
Oklahoma City, OK 73108

25

Telephone: (405) 389-4989
abm@murphylegalfirm.com

William B. Federman\*
Tanner R. Hilton\*
**FEDERMAN & SHERWOOD**
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone: (405) 235-1560
4131 North Central Expressway, Suite 900
Dallas, Texas 75204
wbf@federmanlaw.com
trh@federmanlaw.com

Marc H. Edelson\*
**EDELSON LECHTZIN LLP**
411 S. State Street
Suite N300
Newtown, PA 18940
Telephone: (215) 867-2399
medelson@edelson-law.com

Mark S. Reich
Melissa G. Meyer
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel.: (212) 363-7500
Email: mreich@zlk.com
Email: mmeyer@zlk.com

*\*Pro Hac Vice admitted*

*Attorneys for Plaintiffs and
The Proposed Class*

26

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2025, a copy of the foregoing was served on all Parties that have appeared in this action electronically through the U.S. District Court, Southern District of Texas ECF system to all counsel of record all of whom are Filing Users of the Court's Electronic Filing System.

*/s/ Gary M. Klinger*
Gary M. Klinger